# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

WILLIE J. COLLINS, )
)
       Plaintiff/Appellant, ) Davidson Circuit No. 94C-981
)
VS. ) Appeal No. 01A01-9607-CV-00339
)
METROPOLITAN GOVERNMENT )
OF NASHVILLE AND DAVIDSON )
COUNTY, TENNESSEE, and )
HANK HILLIN, SHERIFF, )
)
       Defendants/Appellees. )

**FILED**

April 18, 1997

Cecil W. Crowson
Appellate Court Clerk

### APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
### AT NASHVILLE, TENNESSEE
### THE HONORABLE WALTER C. KURTZ, JUDGE

**MARK NORTH**
Madison, Tennessee
Attorney for Appellant

**JAMES L. MURPHY, III**
**Director of Law**
**WM. MICHAEL SAFLEY**
**Metropolitan Attorney**
**Department of Law of the**
**Metropolitan Government of**
**Nashville and Davidson County**
Nashville, Tennessee
Attorneys for Appellees

**AFFIRMED**

                         **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

Plaintiff Willie J. Collins appeals the trial court's final order dismissing his negligence claims against Defendant/Appellee Metropolitan Government of Nashville and Davidson County (hereinafter "Metro"). After conducting a bench trial, the trial court dismissed Collins' claims against Metro based on the court's ruling that Collins had failed to meet his burden of proving that Metro either created, knew of, or should have known of a dangerous or defective condition on its premises, as required by the Tennessee Governmental Tort Liability Act.[1] We affirm.

Collins filed this lawsuit for injuries that he allegedly suffered when a television at the Criminal Justice Center in Nashville fell off of its mountings and struck Collins on the head. At the time of his injuries, Collins was an inmate at the Criminal Justice Center jail. The television was mounted on a suspended bracket approximately twelve feet from the floor. As the basis for his negligence claims against Metro,[2] Collins alleged that the manner in which the television was mounted constituted a dangerous condition, that Metro employees were responsible for creating the dangerous condition, and, further, that Metro employees either were aware of, or should have been aware of, the dangerous condition.

In his deposition introduced at trial, Collins testified that he and about five other inmates were playing cards at a recreation table when he heard a "big boom" and "felt pain in the top of [his] head." Collins later found out that a television had fallen from the ceiling, hitting him on the head and knocking him to the floor. Collins remembered that the television hung on brackets. Part of the mounting structure was held together by screws, but, according to Collins, the screws had been replaced by toothbrushes. Ronnie Simms, a fellow inmate, generally corroborated Collins' testimony. Simms testified that the structure holding up the television "had toothbrushes in it" instead of bolts or screws. According to Simms, the television was being held up by "wire, toothbrushes, strings and everything."

---

[1]T.C.A. §§ 29-20-101 to 29-20-407 (1980 & Supp. 1996).

[2]Collins initially filed this complaint against Metro and against Sheriff Hank Hillin. By an agreed order, the trial court dismissed Collins' claims against the sheriff.

In Metro's defense, Timothy Hindsley, a correctional officer at the Criminal Justice Center, testified that he and other correctional officers checked the cells at least every twenty minutes while making their rounds. The officers performed a more thorough check on at least a weekly basis. This inspection included the television because "[t]he television and other areas in the day rooms are common places where [the inmates] would hide contraband or drugs, [or] weapons of some sort." In inspecting the television, the officers generally "would get on top of the table, move the television around, look under the television with flashlights, [and] just do a thorough inspection of and around the television." Officer Hindsley was not aware of any previous problems with this particular television, and he did not know of any television within the Criminal Justice Center ever to have fallen. Hindsley also was not aware if any routine maintenance was performed on the mountings or the television, and he admitted that, in inspecting the television, he never checked the bolts. Nevertheless, Hindsley directly contradicted the inmates' testimony that toothbrushes were used to hold up the television.

Officer Hindsley was standing out in the hallway in front of the cellblock when he heard a loud bang from inside. When he entered the cellblock, Hindsley observed the television lying on the table. Hindsley testified that, contrary to Collins' deposition testimony, Collins was conscious and was standing beside the table. Collins informed the officer that the television had fallen from the ceiling and hit him in the head. As Hindsley was talking to Collins, the other inmates in the cellblock began yelling, "Lawsuit, lawsuit." Collins then "went to his knees," and the officer summoned medical assistance.

After the accident, the facility's maintenance officer, Rolus Smith, replaced the television which had fallen from the mountings. He noticed that the mounting structure itself "was intact" and "in good shape." Smith did not have to replace the bolts on the mountings, and he saw no evidence of any toothbrushes in the area of the bolts or around the television. Smith testified that, contrary to Metro's prior answer to interrogatories, routine maintenance was performed on the televisions and mountings, and they were "checked periodically." Smith stated that no other televisions had fallen at the Criminal

Justice Center. James McIllwain, facility manager, also examined the mounting structure after the television fell, and he testified that "[t]here was nothing wrong with it." No bolts or screws had to be replaced, and McIllwain never observed any toothbrushes being used to secure the mountings on this television or any other television. Like the other Metro employees, McIllwain had no knowledge of any other televisions within the Criminal Justice Center falling from their mountings.

At the conclusion of all the evidence, the trial court rejected Collins' claims, finding first, as a matter of fact, "that toothbrushes were not holding up . . . the television set." As for Metro's creation or knowledge of a dangerous condition on its premises, citing Tennessee Code Annotated section 29-20-204(b),[3] the trial court further ruled that:

> To be entitled to a verdict based upon a defective or unreasonably dangerous condition of the premises, plaintiff must show that the defendant either created the condition or knew of the condition prior to plaintiff's injury long enough for defendant to have corrected the condition or given warning of it, or that the condition had existed for a sufficient length of time, that the defendant, in the [exercise] of reasonable care, should have known of its existence and corrected or warned of it.
>
> I think here that the plaintiff's proof fails measured against that standard. There's not proof that the defendant created this condition or knew of the condition long enough to have corrected it or that the condition had existed for a sufficient length of time that the defendant, in [exercise] of reasonable care, should have known of its existence and corrected or warned of it.

The trial court entered a judgment in favor of Metro, and this appeal followed.

Inasmuch as this case was tried by the court below sitting without a jury, this court's review on appeal is governed by Tennessee Rule of Appellate Procedure 13(d), which directs us to review the case de novo. Roberts v. Robertson County Bd. of Educ., 692 S.W.2d 863, 865 (Tenn. App. 1985); Haverlah v. Memphis Aviation, Inc., 674 S.W.2d 297, 300 (Tenn. App. 1984); T.R.A.P. 13(d). In conducting a de novo review of the record below, however, this court must presume that the trial court's findings of fact are correct. Under this standard of review, we must affirm the trial court's decision unless the trial court

---

[3]T.C.A. § 29-20-204(b) (1980).

4

committed an error of law affecting the result or unless the evidence preponderates against the trial court's findings. Roberts, 692 S.W.2d at 865.

Applying the foregoing standard, we affirm the trial court's judgment entered in favor of Metro in this case. The Tennessee Governmental Tort Liability Act removes a governmental entity's immunity from suit "for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity." T.C.A. § 29-20-204(a) (1980). The statute does not remove immunity, however, unless the plaintiff alleges, and ultimately proves, that the governmental entity had "constructive and/or actual notice" of the dangerous or defective condition. T.C.A. § 29-20-204(b) (1980); see Lee v. City of Cleveland, 859 S.W.2d 347, 349 (Tenn. App. 1993); Smith v. City of Covington, 734 S.W.2d 327, 329 (Tenn. App. 1985), aff'd, 1987 WL 12494 (Tenn. June 22, 1987). This statutory requirement appears to be in accordance with common-law principles governing premises liability cases. See, e.g., Underwood v. HCA Health Servs., 892 S.W.2d 423, 427 (Tenn. App. 1994) (stating that, in order to establish prima facie case of premises liability, plaintiff must show that defendant had actual or constructive notice of dangerous or defective condition).

In the present case, Collins sought to prove that Metro had constructive and/or actual notice of a dangerous condition on its premises by showing (1) that Metro mounted the television in such a manner that the structure constituted a dangerous condition; (2) that Metro employees failed to periodically inspect the mounting structure for loose screws or bolts; and (3) that inmates observed the structure being held together with toothbrushes instead of bolts. Regarding Collins' last theory, the trial court specifically found, as a matter of fact, that toothbrushes were not holding up the television set, and we conclude that the evidence does not preponderate against such a finding. Although the inmates testified that bolts in the mounting structure had been replaced by toothbrushes, Metro's correctional and maintenance officers directly refuted this testimony. When a conflict in testimony requires the trial court to make a determination regarding the credibility

5

of a witness or witnesses, such a determination is "binding on the appellate court unless from other real evidence the appellate court is compelled to conclude to the contrary." Hudson v. Capps, 651 S.W.2d 243, 246 (Tenn. App. 1983).

As for Collins' other theories, we also affirm the trial court's ruling that Collins failed to prove either that Metro created a dangerous condition on its premises or that Metro knew or should have known of such a dangerous condition. Contrary to Collins' contention, the record contains no compelling evidence that Metro created a dangerous condition by mounting the television in an unsafe manner. At trial, Collins sought to show that Metro had mounted the television so that it hung from the ceiling at a precarious angle. Metro employees acknowledged that the mounting structure was designed so that the television would hang from the ceiling at an angle; however, they also testified that the mounting structure and the television were held securely together by a system of bolts, screws, brackets, and plates, and that the television would not necessarily fall from the structure even if one or more bolts came loose. Cf. McGaughy v. City of Memphis, 823 S.W.2d 209, 215 (Tenn. App. 1991) (holding that public utility had constructive and/or actual notice of dangerous condition where utility installed and maintained uninsulated high power lines over private property in close proximity to lumber storage and other activities).

Moreover, the record fails to compel the conclusion that Metro either knew or should have known that the television's mounting structure presented a dangerous condition. Inspections conducted by Metro employees at the facility after the accident revealed that nothing was wrong with the mounting structure and that no bolts or screws were missing from the structure. Facility employees further testified that, prior to the accident, televisions

6

and mountings at the Criminal Justice Center were checked periodically,[4] and that no other televisions at the facility had fallen from their mountings.

As this court previously stated,

> The legislature specifically made the removal of immunity under [section 29-20-204] conditional upon allegation and proof that the entity knew or should have known of the condition of its instrumentality causing the damages complained of. Thus, if the plaintiff is unable to prove that the entity had actual or constructive notice of the defective condition the entity is immune from suit.

Smith v. City of Covington, 734 S.W.2d 327, 329 (Tenn. App. 1985), aff'd, 1987 WL 12494 (Tenn. June 22, 1987); accord Lee v. City of Cleveland, 859 S.W.2d 347, 349 (Tenn. App. 1993). In accordance with the foregoing principles, we conclude that the trial court properly dismissed Collins' negligence claims against Metro.[5]

The judgment of the trial court is hereby affirmed. Costs on appeal are taxed to Collins, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
FARMER, J.

---

[4]In any event, to the extent that Collins' lawsuit against Metro rests on Collins' allegations that Metro employees negligently failed to inspect the television and the mounting structure, such suit is barred by Tennessee Code Annotated section 29-20-205(4), which provides that governmental immunity is not removed if an injury arises out of an employee's "failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property." T.C.A. § 29-20-205(4) (1980); see Johnson v. EMPE, Inc., 837 S.W.2d 62, 64 (Tenn. App. 1992) (holding that allegations charging city with failure to inspect premises fell directly within exception of section 29-20-205(4) and any action based thereon was barred); Mowdy v. Kelly, 667 S.W.2d 489, 492 (Tenn. App. 1983) (holding that county was immune from liability when proximate cause of plaintiff's injury was employee's failure to inspect property); cf. Morrow v. Town of Madisonville, 737 S.W.2d 547, 548-49 (Tenn. App. 1987) (holding that town was not immune under section 29-20-205(4) where alleged negligence was not employee's failure to inspect water meter cover but, rather, employee's improper replacement of water meter cover after reading meter).

[5]We also agree with the trial court's ruling that the doctrine of res ipsa loquitur did not apply in this case. See Underwood v. HCA Health Servs., 892 S.W.2d 423, 427 (Tenn. App. 1994) (holding that doctrine of res ipsa loquitur did not apply in action against hospital for injury sustained by plaintiff when ice dispenser cover fell on her where plaintiff presented no evidence that ice dispenser itself was not operating properly or that cover was defective or improperly attached).