## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

THE CIT GROUP/SALES FINANCING, )
INC., as successor in interest to )
General Electric Capital Asset )
Management Corporation as )
Servicing Agent for Governmental )
National Mortgage Association, )

FILED

July 31, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

Plaintiff/Appellant, ) Madison Chancery No. 49906

)

VS. ) Appeal No. 02A01-9706-CH-00120

)

LESLIE R. WILLIAMS, )

)

Defendant/Appellee. )

APPEAL FROM THE CHANCERY COURT OF MADISON COUNTY
AT JACKSON, TENNESSEE
THE HONORABLE JOE C. MORRIS, CHANCELLOR

JAMES DAVID NAVE
HIX GRAY & NAVE
Nashville, Tennessee
Attorney for Appellant


NATHAN B. PRIDE
Jackson, Tennessee
Attorney for Appellee

**REVERSED AND REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

Plaintiff CIT Group/Sales Financing, Inc. (CIT), the successor-in-interest to the original plaintiff, General Electric Capital Asset Management Corporation, appeals the trial court's order awarding Defendant/Appellee Leslie R. Williams damages in the amount of $4,464.00 relative to CIT's removal of a mobile home from Williams' property pursuant to a writ of possession. For the reasons stated hereinafter, we reverse the trial court's judgment.

I. Factual and Procedural History

In the absence of a transcript, the parties agreed to the following statement of the evidence and proceedings below:

1. On April 13, 1992, Richard D. Swilley and Ruth A. Swilley, who are not parties to this lawsuit, purchased a 1992 Southern Hospitality double wide mobile home . . . (hereinafter "the mobile home").

2. The Swilleys executed a Retail Installment Contract and Security Agreement dated April 13, 1992 (hereinafter "the Security Agreement"). [CIT] held a valid and properly perfected security interest in said mobile home pursuant to the Security Agreement, [and] two Tennessee Certificates of Title noting [CIT's] lien on the mobile home . . . .

3. After executing the Security Agreement and purchasing the mobile home, the Swilleys moved the mobile home to real property located in Madison County, Tennessee known as 149 Iris Road in Jackson. The Swilleys had purchased this property from the Defendant, Leslie R. Williams. In purchasing the real property from him, the Swilleys executed a Trust Deed granting Williams a lien against the real property to secure an indebtedness they owed him in the original principal amount of $4,500.00. . . .

4. On November 30, 1992, the Swilleys filed a petition for relief under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Tennessee, Eastern Division. During the course of the bankruptcy proceedings, the Swilleys abandoned the mobile home and surrendered their interest in the mobile home to [CIT]. On November 1, 1994, the bankruptcy court entered an Order granting [CIT] relief from the automatic stay in that case and permitting [CIT] to proceed with the enforcement of its security interest in the mobile home.

5. Before [CIT] obtained relief from the automatic stay in the Swilleys' bankruptcy case so that it could repossess the mobile home, [Williams] foreclosed upon his lien evidenced by the Trust Deed. [Williams] purchased the real property at the foreclosure sale.

2

6. Also, before [CIT] had obtained relief from the automatic stay in the Swilleys' bankruptcy case, [Williams], by and through an attorney named R. Bradley Sigler, asserted an interest in the mobile [home] superior to [CIT's] and took the legal position that because [Williams] had purchased the real property at the foreclosure sale and was now the owner of the real property on which the Swilleys' mobile home was located, [CIT] could not take possession of the mobile home. . . . Over the course of several months, [Williams] continued to withhold his consent to allow [CIT] to repossess the mobile home. Because [Williams] asserted this legal position, [CIT] could not exercise its rights to repossess the mobile home and remove it from [Williams'] property and had no alternative but to file the complaint against [Williams] to recover the mobile home and thus initiate this civil action.

7. [CIT] initiated this lawsuit by filing a complaint against [Williams] on December 5, 1994 to recover personal property pursuant to [Tennessee Code Annotated section] 29-30-101 et seq.

8. [Williams] filed an answer to [CIT's] complaint on December 22, 1994 denying that [CIT] was entitled to possession of the mobile home asserting that the mobile home had become affixed to the real property now owned by him. In his answer, as well as [his] Motion for Summary Judgment and all other proceedings filed with the Court, [Williams] requested that the Court make a determination as to any losses and damages that he may have suffered as a result of the actions of [CIT].

9. At the possessory hearing in this case held on January 4, 1995, [the Chancellor] ruled that the issue of possession should be decided on motion for summary judgment.

10. [Williams] filed a motion for summary judgment on May 22, 1995.

11. Following the hearing on the motion for summary judgment, . . . the Chancery Court entered an Order denying [Williams'] motion for summary judgment and awarding [CIT] a judgment for possession of the mobile home for which a Writ of Possession could issue if necessary.

12. On September 8, 1995, the Clerk & Master, Madison County issued a Writ of Possession directing the Sheriff of Madison County, Tennessee to deliver possession of the mobile home to [CIT].

13. The Sheriff of Madison County executed the Writ and delivered possession of the mobile home to [CIT].

14. On December 13, 1996, [Williams] filed a Motion to Determine Damages. . . . [I]n the motion, [Williams] asked the Court to determine whether or not damages did accrue as a result of [CIT's] removal of the mobile home from the real property.

15. On January 14, 1997, the Court conducted a hearing on [Williams'] Motion to Determine Damages. Defendant Williams was the only witness who testified at the hearing. [Williams] testified that he had purchased the real property at the foreclosure sale and that, at the time he purchased the real property at this sale, he was aware that the mobile home was located on it. [Williams] testified that he thought it would cost about $1,500.00 to remove debris from the property, including the remains of the foundation of the mobile home and a driveway which the Swilleys had installed, which remained after the Sheriff of Madison County had executed the Writ and delivered possession of the mobile home to [CIT]. [Williams] offered into evidence pictures of the real property as it existed after the Sheriff had executed the Writ. [Williams] also testified that he did not actually pay the approximately $1,500.00 to remove these items from the property but he still claimed this amount as damages because he had, by the time of the hearing, sold the property to a third party and [Williams] thought that his sale price had been affected to that extent. [Williams] also testified that he had paid taxes assessed against the real property by virtue of the mobile home being located thereon. [Williams] testified that the mobile home was not located in a mobile home park owned by him. [Williams] also claimed that he had been deprived of the use of the real property by virtue of the mobile home being located on the property and claimed damages in the amount of $1,600.00. [Williams] testified that he had sustained damages in the total amount of $4,464.00. Upon cross examination, [Williams] acknowledged that he had refused [CIT] access to his property to allow it to remove the mobile home. . . .

16. Immediately following the hearing, from the bench, the Chancellor ruled that [Williams] was entitled to recover damages in the total amount of $4,464.00. On February 14, 1997, the Chancery Court entered an Order granting [Williams] a judgment against [CIT] in the amount of $4,464.00 consisting of $1,500.00 for diminution of value of the real property, $1,364.00 for taxes assessed upon the mobile home and $1,600 for loss of use of the real property.

17. [CIT] filed its Notice of Appeal of the Order awarding [Williams] damages in the amount of $4,464.00 on March 13, 1997.

II. Discussion of the Law

Inasmuch as this case was tried by the court below sitting without a jury, this court's review on appeal is governed by Tennessee Rule of Appellate Procedure 13(d), which directs us to review the case de novo upon the record, with a presumption that any factual findings made by the trial court are correct. Roberts v. Robertson County Bd. of Educ., 692 S.W.2d 863, 865 (Tenn. App. 1985); Haverlah v. Memphis Aviation, Inc., 674 S.W.2d 297,

4

300 (Tenn. App. 1984); T.R.A.P. 13(d). Under this standard of review, we must affirm the trial court's decision unless the trial court committed an error of law affecting the result or unless the evidence preponderates against the trial court's findings. Roberts, 692 S.W.2d at 865.

Applying this standard, we first conclude that the trial court erred in awarding Williams damages which allegedly were caused by the removal of the mobile home from Williams' property. In order to recover from CIT for any damages to his real property, Williams was required to demonstrate that such damages were proximately caused by the acts of CIT or its agents. Simmons v. O'Charley's, Inc., 914 S.W.2d 895, 903 (Tenn. App. 1995); Fortunes Untold, Inc. v. Watson, No. 03A01-9705-CV-00164, 1997 WL 674783, at *2 (Tenn. App. Oct. 31, 1997). Here, Williams failed to show that CIT's actions caused the damages to his property. Williams testified that he suffered damages because "it would cost about $1,500.00 to remove debris from the property, including the remains of the foundation of the mobile home and a driveway which the Swilleys had installed, which remained after the Sheriff of Madison County had executed the Writ and delivered possession of the mobile home to [CIT]." Alternatively, Williams testified that his property had depreciated in value by the amount of $1,500.00 by virtue of the debris remaining on his property. The only testimony on this issue tends to show that the Swilleys, and not CIT, caused the damages to Williams' property. The Swilleys apparently built the foundation and driveway which later had to be removed, and the record contains no evidence that CIT's action of removing the mobile home caused any additional damages to Williams' property. Accordingly, we reverse that portion of the trial court's judgment awarding Williams $1,500.00 for damages caused by CIT's removal of the mobile home from Williams' property.

On appeal, Williams contends that the photographs he placed into evidence clearly showed the "[r]uts, debris and overall condition that made the land less valuable" after CIT's removal of the mobile home. The record on appeal, however, fails to contain any photographs, and, thus, we have no way of knowing what damages, if any, these

5

photographs may have shown. Moreover, even if the photographs did show some damage to Williams' property, the agreed statement of evidence contains no testimony to support the conclusion that these damages were proximately caused by the acts of CIT.

We similarly reverse that portion of the trial court's judgment awarding Williams $1,600.00 for his loss of use of the property. At the January 1997 hearing on damages, Williams testified that he had been deprived of the use of the real property by virtue of the mobile home being located on the property. Upon cross-examination, however, Williams acknowledged that he had refused to permit CIT to remove the mobile home from the property. In light of this evidence, we can only conclude that Williams' losses were caused either by the Swilleys' placement of the mobile home on his property in the first instance, or by Williams' own refusal to permit CIT to remove the home, rather than by any actions of CIT.

On appeal, Williams contends that his $1,600.00 loss of use claim actually was based on his loss of use of the property after CIT's removal of the mobile home from the premises. According to Williams, he claimed a loss of use for the eight-month period from September 1995 to April 1996 because "he could not use his property due to the condition in which it was left" after CIT's removal of the mobile home. The record, however, fails to support Williams' description of his loss of use claim made below. Instead, the record reveals that Williams based his loss of use claim on the fact that he was "deprived of the use of the real property by virtue of the mobile home being located on the property."

As a final matter, we reverse the trial court's award of damages to Williams for $1,364.00 in property taxes which were allocable to the mobile home. We cannot determine from the record before us what portion of these taxes may have been incurred during the time in which Williams refused to permit CIT to remove the mobile home from the property. Moreover, we have been cited to no authority which would shift the burden of paying these taxes from the real property owner to the mobile home owner. The parties have directed our attention to Tennessee Code Annotated 67-5-802, which shifts the

6

responsibility for paying these taxes to the mobile home owner in cases where the mobile home is located in a mobile home park. See T.C.A. § 67-5-802 (1994); see also Belle-Aire Village, Inc. v. Ghorley, 574 S.W.2d 723 (Tenn. App. 1978); City of Gallatin v. Delinquent Taxpayers, 1987 WL 18068 (Tenn. App. Oct. 8, 1987); Tenn. Op. Att'y Gen. Nos. 95-071, 94-048. In light of Williams' testimony below that the mobile home was not located in a mobile home park owned by him, however, we conclude that Williams could not shift responsibility for payment of the taxes to CIT.

We are mindful that our limited standard of review as an appellate court requires us to affirm the trial court's decision unless the trial court committed an error of law affecting the result or unless the evidence preponderates against the trial court's findings. Roberts v. Robertson County Bd. of Educ., 692 S.W.2d 863, 865 (Tenn. App. 1985). Thus, even where the trial court reaches the correct result based on erroneous reasoning, this court will affirm the trial court's judgment on any proper basis. Allen v. National Bank of Newport, 839 S.W.2d 763, 765 (Tenn. App. 1992). In this case, however, we have been presented with no legal theory which would support the award of damages in Williams' favor, and we can conceive of no proper basis for affirming the judgment.

The trial court's judgment is hereby reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellee, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

7

_____

CRAWFORD, P.J., W.S.


_____

FARMER, J.