**Philip W. SMITH, M.D.,**

v.

**Moquey Kseal MARQUROSS.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

April 23, 2008 Session.

May 28, 2008.

Permission to Appeal Denied by Supreme Court Dec. 1, 2008.

Christopher D. Markel and April Perry Randle, Chattanooga, Tennessee, for appellant, Moquey Marquross.

David M. Elliott and Katherine Higgason Lentz, Chattanooga, Tennessee, for appellee, Philip W. Smith, M.D.

**OPINION**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

This action arose out of plaintiff's purchase of an aircraft from defendant on Ebay. The Trial Court ruled that defendant denied plaintiff his right to inspect the goods pursuant to Tenn.Code Ann. § 47–2–513, and plaintiff was not required to purchase the aircraft. On appeal, we affirm the Judgment of the Trial Court.

Plaintiff brought this action arising out of his purchase of an aircraft which defendant had offered through an auction on Ebay. Plaintiff alleged that defendant was liable for fraudulent inducement to contract and breach of contract, and negligent misrepresentation, plus violation of the Tennessee Consumer Protection Act. Plaintiff asked for damages, rescission of the contract, and attorney's fees and costs.

Defendant answered, stating the auction ended when plaintiff exercised the "buy it now" option on Ebay, and not as the highest bidder. Defendant averred that plaintiff was told that if he wished to fly the plane, he would have to provide proof of insurance, and provide a licensed pilot at the inspection site, and plaintiff failed to do either. Defendant further alleged that he did have his own pilot available at the inspection site to fly the plane, but the pilot could not do so because plaintiff did not provide proof of insurance, and he counter-claimed for the outstanding purchase price plaintiff agreed to pay, minus what defendant had been able to sell the plane for to another party.

At trial, plaintiff testified that he had a private pilot's license and was interested in buying an airplane, and identified a printout of the Ebay listing for the plane. He testified that the listing showed that the plane sold for $42,870.00 on July 7, 2005, and that when he agreed to buy the plane the purchase was conditioned on ability to fly. He testified that he paid $1,000.00

earnest money through Paypal, and arranged to pick up the plane. Copies of the parties' emails were introduced, and plaintiff testified there was nothing in the emails that said he had to get insurance on the plane, and that the parties never discussed getting insurance via phone.

He testified the parties arranged a time and place to inspect the plane, and that en route, he had a conversation with defendant about being able to see the plane fly, and defendant told him he didn't know if he could, but there was no discussion about insurance. Plaintiff testified that he had talked to insurance companies and got a quote on insurance, and had arranged for a pilot in Seattle to bring the plane back home for him. The plaintiff testified that when he arrived, the plane was sitting outside and that defendant had some trouble starting the engine on the plane. The plaintiff asked defendant to demonstrate that the plane could fly, and defendant refused. Plaintiff testified that he refused to pay the full purchase price for the plane without being able to see it fly, and left without paying any more money. Plaintiff testified that he lodged a complaint with Ebay that the plane was misrepresented, and asked for his deposit refunded.

He further testified that defendant later relisted the plane for sale on Ebay, but put a disclaimer in the ad stating that the plane could not be flown until after it was sold. Plaintiff was of the opinion that the ad for the plane was deceptive and that the plane was not in as good condition as defendant represented.

Plaintiff testified that the only reason he did not complete the purchase was because defendant refused to demonstrate that the plane would fly.

Defendant testified that he spoke to plaintiff by phone, via email and arranged for plaintiff to pick up the plane in Montana. Plaintiff was to pay the full purchase price at that time. He testified that he told plaintiff that the plane was collateral on an SBA loan, which meant it could not be flown without insurance. He testified that he told plaintiff the plane either needed insurance or had to be paid for in full before it could be flown.

Defendant testified he met plaintiff in Montana, and that plaintiff immediately began to criticize the condition of the plane, demanding that it be started and flown. He testified that he arranged for his father-in-law to come over and start the plane, and stated that his father-in-law could fly the plane, but that he could not allow it to be flown without insurance. He testified that when he relisted the plane it sold it for $30,100.

Defendant further testified that the plane was fully functional, and the only issues were cosmetic. He admitted that the Ebay listing did not mention insurance, nor did the emails, but he stated they discussed it in their phone conversations, and that he had no insurance on the plane.

The Trial Court, in a Memorandum Opinion, found the parties had a contract, as there was an offer and an acceptance, and that the transaction was governed by the Uniform Commercial Code, which contained provisions regarding implied warranties that would apply to the contract. The Court ruled that defendant made express warranties that the plane would fly, and found that plaintiff had the right to inspect the goods, i.e., to see if the plane would really fly, and that since this was not demonstrated, plaintiff had a right to reject the plane and end the contract.

The Court noted that "a person's credibility is diminished when he makes statements that should be easily documented and no supporting documents are produced", apparently referring to defen-

dant's lack of documentation regarding the SBA loan and the subsequent sale of the plane. The Court noted that the UCC provided for a warranty of title, and defendant never disclosed in the ad nor the emails that there was a security interest on the plane. Further, that defendant did not disclose in the listing nor the emails that the insurance would be required before the plane could be flown. Thus, the Court held that plaintiff had a right to reject the plane on the basis that it was not demonstrated to be flight-worthy, and was entitled to a refund of his deposit, plus interest. The Counter–Claim was dismissed.

Defendant filed a Motion to Alter or Amend, on the grounds that the listing stated that the plane had not had its annual, and that federal law thus prohibited it from being flown. The Motion was denied and this appeal ensued.

The issues presented for review are:

1. Whether the Trial Court erred in holding that a reasonable inspection of the airplane, pursuant to Tenn. Code Ann. § 47–2–513(1), required defendant to demonstrate the plane's flight capability?

2. Whether the Trial Court erred by holding that, pursuant to the provisions of the UCC, plaintiff was legally entitled to reject the airplane and revoke his acceptance of the contract?

Defendant argues that it was unreasonable to require him to demonstrate the plane's flight capability pursuant to Tenn. Code Ann. § 47–2–513(1), which states that the buyer has a "right before payment or acceptance to inspect [the goods] at any reasonable place and time and in any reasonable manner." Defendant further argues that because the listing and the emails made clear that the plane was "out of annual", i.e. had not had its annual

inspection pursuant to 14 C.F.R. 91.409, it was clear that it could not be flown and thus it was not reasonable to require same. Plaintiff counters that defendant represented the plane was registered under an experimental certificate, and thus was not subject to the annual inspection requirement. *See* 14 CFR 91.409(c). None of these facts were presented to the Trial Court at trial, however, but it does appear that an experimental certificate exempts a plane from the annual inspection requirement pursuant to 14 CFR 91.409(c). Accordingly, there is no basis for relying upon this provision given the defendant's representation in the listing regarding the plane's status of having an experimental certificate.

■■■ As the Trial Court ruled, this transaction is governed by the UCC pursuant to *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297 (Tenn.Ct.App.1984), wherein this Court held that the sale of an aircraft was a "transaction in goods", and the Trial Court correctly held that the airplane was subject to the right of inspection set forth in Tenn.Code Ann. § 47–2–513, which states:

Unless otherwise agreed and subject to subsection (3), where goods are tendered or delivered or identified to the contract for sale, the buyer has a right before payment or acceptance to inspect them at any reasonable place and time and in any reasonable manner.

The official comments state that "reasonableness will be determined by trade usages, past practices between the parties and the other circumstances of the case."

As the Trial Court held, it was reasonable for plaintiff to expect that the plane's flight-worthiness would be demonstrated, since that is clearly the primary purpose of plaintiff's purchase, i.e. to receive a plane that would fly, and also since defendant

expressly stated in the listing that the plane was a "dream to fly" and was "ready for anything". Plaintiff's expectation that the plane would be able to fly was based on defendant's express warranties, and it was reasonable to expect that flight capability would be demonstrated before the transaction was completed. Since defendant did not demonstrate the same, we agree with the Trial Court that the plaintiff was entitled to reject the plane.

Defendant argues that even if it was reasonable to require him to demonstrate that the plane was capable of flight, this was not a basis to allow plaintiff to rescind the contract, because Tenn.Code Ann. § 47–2–513(2) states that inspection expenses are to be borne by the buyer. Thus, plaintiff should have provided a pilot and also paid to have the plane's annual inspection done. Defendant admitted, however, that he refused to allow the plane to be flown not because plaintiff had no pilot available, nor because the plane had not had an annual inspection, rather, defendant admitted that he refused to allow the plane to be flown because it was not insured. Plaintiff denied that defendant disclosed this insurance requirement to him prior to his arrival in Montana, and the Trial Court impliedly found that plaintiff's version of the events was more credible. Thus, while plaintiff arguably would have borne the cost of a reasonable inspection, plaintiff was not given the opportunity to do so due to defendant's failure to allow the plane to be flown without insurance, which plaintiff had not been aware of prior to his arrival in Montana. Under these facts, the reliance of defendant upon the statutory provisions to relieve him of his obligation to allow a reasonable inspection of the plane's flight-worthiness, was misplaced.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to the defendant Moquey Kseal Marquross.