## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | |
|---|---|
| H. W. JENKINS CO., | ) |
| | ) |
| Plaintiff/Appellee, | ) Shelby Chancery No. 105743-1 R.D. |
| | ) |
| VS. | ) Appeal No. 02A01-9707-CH-00170 |
| | ) |
| G. T. DESIGNS OF MEMPHIS, | ) |
| INC., BRIGHTON BANK, | ) |
| | ) |
| and | ) |
| | ) |
| JOHN T. FALKE and wife, LANA S. | ) |
| FALKE, ARNOLD M. WEISS, Trustee, | ) |
| and THE PRUDENTIAL HOME | ) |
| MORTGAGE COMPANY, INC., | ) |
| | ) |
| Defendants/Appellants. | ) |

FILED

March 26, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE NEAL SMALL, CHANCELLOR

R. MARK GLOVER
BAKER, DONELSON, BEARMAN & CALDWELL
Memphis, Tennessee
Attorney for Appellants

JOHN D. HORNE
THE WINCHESTER LAW FIRM
Memphis, Tennessee
Attorney for Appellee

**AFFIRMED IN PART, REVERSED IN PART**

ALAN E. HIGHERS, J.

CONCUR:

DAVID R. FARMER, J.

HOLLY KIRBY LILLARD, J.

This appeal involves a suit to enforce a materialmen's lien on a new home.

Defendants/Appellants, John T. and Lana S. Falke ("Falkes"); Arnold M. Weiss, Trustee; and The Prudential Home Mortgage Company, Inc. (collectively "appellants"), appeal from the order of the chancery court which entered judgment in favor of plaintiff, H.W. Jenkins Co. ("Jenkins"), allowing the enforcement of a materialmen's lien for the amount of all the materials invoiced to the Falkes' home, as well as interest and attorney's fees. For reasons stated hereinafter, we affirm the judgment of the chancery court in part and reverse in part.

### Facts and Procedural History

Jenkins has for many years been in engaged in the sales of lumber and related building materials in Shelby County, Tennessee. In February of 1992, G.T. Designs of Memphis, Inc. ("G.T. Designs") entered into a written contract with Jenkins for the sale and delivery of building materials to G.T. Designs to various parcels of real property for use by G.T. Designs in the construction of residences. Pursuant to that agreement, G.T. Designs agreed to pay service charges at the rate one and a half percent per month for an annual percentage rate of eighteen percent on all accounts becoming thirty or more days past due. G.T. Designs also agreed to pay attorney's fees in the amount of thirty-three and one third percent of the total amount due Jenkins, in the event that an account were to be referred to an attorney for collection.

G.T. Designs is a general contractor and homebuilder in the Memphis and Shelby County area. On June 11, 1994, G.T. Designs became the owner of certain property pursuant to a Warranty Deed described as:

> Lot 341, Final Plan, Phase VII, Parcel 18 and Part of Parcels 17, 19 and 20, HALLE PLANTATION PLANNED DEVELOPMENT as shown on plat of record in Plat Book 144, Page 21, in the Register's Office of Shelby County, Tennessee, to which plat reference is hereby made for a more particular description of said property acquired by G.T. Designs of Memphis, Inc. pursuant to warranty deed of record at Instrument No. EL 3875 in said Register's Office.

From July 18, 1994, through April 27, 1995, pursuant to orders placed by G.T.

2

Designs, Jenkins sold building materials to G.T. Designs for use in the construction of a residence on lot 341. During this time period, Jenkins delivered those building materials to the property. At trial there was some dispute as to whether all of the materials delivered to lot 341 were actually used therein. Jenkins contends that all materials delivered to lot 341 were used in the construction thereof. G.T. Designs owner, Ken Goodwin, testified that G.T. Designs used materials delivered to lot 341 for other jobs but could not detail what materials were removed or how to account for such materials. Lana Falke offered testimony that she had seen G.T. Designs' workers remove doors, trim work and some lumber from the residence being constructed on lot 341. Although G.T. Designs paid for the windows, doors, and trim materials on January 20, 1995, and March 10, 1995, it did not pay Jenkins for the majority of the materials Jenkins delivered to lot 341. The indebtedness of G.T. Designs to Jenkins for the building materials delivered to lot 341 and used by G.T. Designs in the construction of the residence thereon totaled $33,496.35 as of April 25, 1995.

On April 7, 1995, G.T. Designs conveyed lot 341, with the residence thereon, to the Falkes pursuant to a Warranty Deed recorded at Instrument FA 1484 in the Office of the Register of Shelby County, Tennessee. Prior to acquiring the property, the Falkes obtained an owner's affidavit from G.T. Designs in which G.T. Designs represented that all indebtedness due for labor, material, or services which might be the basis for a lien on the property was fully paid. On April 7, 1995, in conjunction with the acquisition of the property, the Falkes executed a Deed of Trust in the property to Prudential Home Mortgage Company that was recorded at Instrument FA 1485 in the Office of the Register of Shelby County, Tennessee.

Upon learning for the first time that G.T. Designs had conveyed the property to the Falkes without paying for the bulk of the materials delivered to lot 341, Jenkins filed its materialmen's' lien in the Office of the Register of Shelby County, Tennessee, at Instrument No. FA 8559. This was done on April 28, 1995, exactly one day after Jenkins last delivery of materials to the property. Immediately following the recording of the lien,

3

Jenkins delivered copies of the recorded lien to G.T. Designs, Brighton Bank, the Falkes, and Prudential by certified mail, return receipt requested.

On May 18, 1995, Jenkins filed this suit to enforce this lien. An attachment was also sought and obtained that same day. This attachment was levied against on May 19, 1995.

On August 3, 1995, appellants filed a joint answer alleging that Jenkins was not entitled to assert the lien. Appellants also filed a counterclaim charging Jenkins with consumer protection violations, a cross claim against G.T. Designs seeking indemnity, and a third party complaint against Ken Goodwin, G.T. Designs president.

After responses were filed with regard to the counterclaim, cross claim, and third party complaint, Jenkins filed a motion for summary judgment against appellants on November 6, 1995. Appellants then filed their motion for summary judgment on May 13, 1996. Thereafter, on August 29, 1996, the chancery court entered an order denying both motions for summary judgment.

On March 25, 1997, a bench trial was conducted by Chancellor C. Neal Small on the claims of all the remaining parties. On April 11 of that same year the chancellor entered a judgment awarding damages to Jenkins and ordering enforcement of the materialmen's lien. That judgment also dismissed appellants' counterclaim against Jenkins, awarded damages to appellants on the cross claim against G.T. Designs, and dismissed the Falkes' third party complaint against Ken Goodwin. This appeal followed.

## Law and Discussion

Inasmuch as this case was tried by the trial court sitting without a jury, this Court's review on appeal is governed by Tennessee Rule of Appellate Procedure 13(d), which directs us to review the case *de novo*. *Roberts v. Robertson County Bd. of Educ.*, 692 S.W.2d 863, 865 (Tenn. Ct. App. 1985); *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 300 (Tenn. Ct. App. 1984); T.R.A.P. 13(d). In conducting a *de novo* review of the

4

record below, however, this Court must presume that the trial court's findings of fact are correct.[1] Under this standard of review, we must affirm the trial court's decision unless the trial court committed an error of law affecting the result or unless the evidence preponderates against the trial court's findings. *Roberts*, 692 S.W.2d at 865.

**Whether the evidence in the record preponderates against
the presumption that the trial court was correct in finding
that the supplier of materials was entitled to a lien.**

Tenn. Code Ann. § 66-11-102(a) provides in pertinent part:

> (a) There shall be a lien upon any lot of ground or tract of land upon which a house or structure has been erected, demolished, altered, or repaired, or for fixtures or machinery furnished or erected, or improvements made, by special contract with the owner or the owner's agent, in favor of the contractor, mechanic, laborer, founder or machinist, who does the work or any part of the work, or furnishes the materials or any part of the materials, or puts thereon any fixtures, machinery, or material, and in favor of all persons who do any portion of the work or furnish any portion of the materials for such building; provided, that the subcontractor, laborer or materialman satisfies all of the requirements set forth in § 66-11-145, if applicable.

Tenn. Code Ann. § 66-11-101(5) in defining the phrase "furnish materials" states:

> "Furnish materials" means supply materials which are incorporated in the improvement and those which become normal wastage in construction operations;. . .[t]he delivery of materials to the site of the improvement shall be prima facie evidence of incorporation of such materials in the improvement.

Delivery to the actual job site is clearly the most unequivocal evidence of "furnishing" materials for the purpose of materialmen's liens. See Annotation, "Delivery of Material to Building Site as Sustaining Mechanic's Lien--Modern Cases," 32 A.L.R. 4th 1130, 1138 n. 8 (1984). The Tennessee statutes on materialmen's liens place great emphasis on delivery to the job site. As illustrated above, § 66-11-101(5) defines the phrase "furnish materials" in pertinent part to mean "supply materials which are incorporated in the

---

[1]We note that appellants theorize that G.T. Designs and Jenkins were engaged in a pseudo-joint venture agreement as evidenced by their weighty financial involvement with each other. However, this defense and/or theory of argument was not raised at trial, and we decline to rule upon a defense presented for the first time on appeal. *Alumax Aluminium Corp. v. Armstrong Ceiling Sys., Inc.*, 744 S.W.2d 907, 910 (Tenn. Ct. App. 1987); *Campbell County Board of Education v. Brownlee-Kesterson, Inc.*, 677 S.W.2d 457 (Tenn. Ct. App. 1984).

5

improvement."  That section also states that "delivery of materials to the site of the improvement [is] prima facie evidence of incorporation of such materials in the improvement."  Tenn. Code Ann. § 66-11-101(5).  A "materialman" is defined by § 66-11-101(10) as "any person who, under contract, furnishes material ... on the site of the improvement or for direct delivery to the site of the improvement."  In *New Memphis Gas Light Co. Cases*, 105 Tenn. 268, 60 S.W.2d 206 (1900), this Court said, "... the lien of the materialman begins when his first material is placed on the property on which the lien is asserted."  Id., 105 Tenn. at 302.

In the case under submission, it is undisputed that the materials in question were delivered to the property.  True and correct copies of the invoices, delivery tickets, and account summaries for these building materials sold to G.T. Designs were presented at trial as evidence of such delivery.  Consequently, under Tenn. Code Ann. § 66-11-101(5), Jenkins created the presumption that said materials were incorporated into the property.  After such evidence of delivery was presented, the burden of showing that such materials were not used at the property shifted to appellants.  At trial, appellants proffered the testimony of Ken Goodwin and Lana Falke in order to shoulder this burden.  In particular, Goodwin testified:

> Q.  You directed workers who work for you to remove materials from Lot 341 that had been distributed there, to move them to other lots; is that correct?
>
> A.  That's correct.
>
> Q.  Directed them to remove lumber to go down to Lot 313?
>
> A.  That's correct.

Goodwin, however, could not testify as to what materials were removed or how to account for these materials.  In fact, Goodwin testified in pertinent part:

> Q.  Well, do you have an estimate on just the value of the merchandise that you had to take out of that lot?
>
> A.  No, sir.
>
> Q.  You don't have any idea how much it might --
>
> A.  It happened so often that it would be very difficult to say. You know, we worked through the weekends and those guys may have done a lot of that on their own.

6

Lana Falke testified that she witnessed workers removing trim materials, doors, windows and some lumber from the property.

> Q. And the -- what type materials and what was the reason -- what type materials did Ken Goodwin remove?
>
> A. A lot of times, it would be trim items, trim base. They had walkie-talkies or they had radios that they would radio each other. The carpenters had radios that were all on the same frequency as Ken and a lot of times, you know, we would be standing and talking and somebody would radio Ken and say, you know, we need -- we need some trim down at Lot 313 and he would -- before he would leave, he would take it with him.
>
> Q. Okay. Did you see any other materials removed? I mean, specifically I know lumber is hard to identify. Anything else besides lumber?
>
> A. Mostly lumbers, there were several doors that were delivered to our house that we did not use because there were door openings but there wasn't any place to -- you could put a door on it but they were useless doors.

It is our opinion that the delivery of materials to particular property creates a very weighty presumption in favor of the supplier of the materials that such materials were, in fact, incorporated into the structure. If we give this presumption less weight, we place a virtually impossible burden on a supplier to account for materials its sends to every site. We do not believe that is what the legislature intended.

On appeal from a judgment rendered by a court without a jury, any conflict in testimony requiring a determination of the credibility of witnesses is for the trial court, and this determination is accorded great weight by this Court unless other real evidence compels a contrary conclusion. *Linder v. Little*, 490 S.W.2d 717 (Tenn. Ct. App. 1972); *See also Duncan v. Duncan*, 686 S.W.2d 568 (Tenn. Ct. App. 1985); *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297 (Tenn. Ct. App. 1984). The findings of the trial court in a non-jury case are entitled to great weight where the trial court saw and heard the witnesses and observed their manner and demeanor on the stand and was therefore in a much better position than the appellate court to judge the weight and value of their testimony. *Smith v. Hooper*, 59 Tenn. App. 167, 438 S.W.2d 765 (Tenn. Ct. App. 1968); *Duncan v. Duncan*, 686 S.W.2d 568 (Tenn. Ct. App. 1985).

We recognize that the evidence concerning whether the materials were actually incorporated into the property in this case was sharply disputed at trial. These conflicts required the trial judge to evaluate the credibility of the witnesses who appeared before him. He resolved these credibility issues in favor of Jenkins. Not having seen these witnesses in person, we are not in a position to say that he was wrong in his assessment of the witnesses' credibility. Clearly, the trial judge had substantial trouble with the credibility of Ken Goodwin's testimony. Considering the importance of credibility in this case, we cannot say that the evidence preponderates against the trial court's findings of fact supporting its conclusion that the amount of materials incorporated into the property were essentially equal to the amount of materials Jenkins delivered thereto.

**Whether the evidence in the record preponderates against the presumption that the trial court was correct in enforcing a materialmen's lien on property of an third party purchaser of a home.**

A material supplier has no right to a lien except as provided by statute, and the statute must be strictly construed. *See Nanz v. Cumberland Gap Park Co.*, 103 Tenn. 299, 52 S.W. 999 (1899).

Appellants contend that Jenkins had no lien or right of lien at the time it filed the notice of their materialmen's lien in the register's office. Particularly, they cite this court to *Tennessee Attorney General Opinion* No. 91-14 which discusses at length the propriety of Tenn. Code Ann. § 66-11-146 and the apparent attempt of the legislature "to prevent subcontractors and material suppliers from having claims against homeowners who had paid the general contractor for all services and materials provided." Tenn. Code Ann. § 66-11-146(a)(1)(2) states:

> (a)(1) As used in this subsection, "residential real property" means a building consisting of one (1) dwelling unit in which the owner of the real property intends to reside or resides as the owner's principal place of residence, including improvements to or on the parcel of property where such residential building is located, and also means a building consisting of two (2), three (3) or four (4) dwelling units where the owner of the real property intends to reside or resides in one (1) of the units as the owner's principal place of residence, including improvements to or on the parcel of property where such residential building is located.

8

(2) Notwithstanding any other provision of law to the contrary, except as provided in subsection (b), on individual contracts to improve residential real property, a lien or right of lien upon such property shall exist only in favor of the general contractor who enters into such contract with the owner of such property or the owner's agent. No lien, except the general contractor's lien, shall exist upon such property under such contract in favor of a subcontractor, materialman, mechanic, laborer, founder, machinist, or any other person who does the work or any part of the work, or furnishes the materials or any part of the materials, or puts thereon any fixtures, machinery or materials, ordered by or through such persons.

Appellants' reliance on this statute and the *Tennessee Attorney General Opinion* No. 91-14 is misplaced. Tenn. Code Ann. § 66-11-146(b)(1)(2) is, along with other pertinent mechanics' and materialmen's lien statutes, controlling. Tenn. Code Ann. § 66-11-146(b)(1)(2) provide:

(b)(1) As used in this subsection, "residential real property" means improvements to or on a parcel of property upon which a building is constructed or is to be constructed consisting of one (1) dwelling unit intended as the principal place of residence of a person or family.

(2) When the owner of residential real property and the general contractor are one and the same person, or such an individual controls entities owning such property and general contracting business, on individual contracts to improve residential real property, a lien or right of lien upon such property shall exist only in favor of the general contractor, subcontractors of the general contractor, and suppliers who contract with the general contractor. No lien in favor of the subcontractor or such suppliers shall exist on such real property from and after the date the general contractor pays the subcontractor or supplier for services performed or material delivered by that supplier or subcontractor. No lien, except as provided in this subsection, shall exist upon such property under such contract in favor of a materialman, mechanic, laborer, founder, machinist or any other person who does the work or any part of the work, or

furnishes the materials or any part of the materials, or puts thereon any fixtures, machinery or materials, ordered by or through such persons.

In the case before us, it is uncontroverted that when Jenkins sold the material to G.T. Designs, G.T. Designs was the owner of the residential real property as defined in (b)(1) and was also the general contractor and builder of the improvements on the property. Tenn. Code Ann. § 66-11-146(b)(2) specifically establishes a lien in favor of the supplier who contracts with the general contractor who is also the owner. Jenkins' lien

9

rights became fixed when the supplies were delivered to the premises since the lien rights are established from the "date of visible commencement of operation." Tenn. Code Ann. § 66-11-104 (1993). In the case before us, Jenkins filed the notice of lien within ninety days after completion of the structure and thus preserved its lien pursuant to the provisions of Tenn. Code Ann. § 66-11-112 (1993). Having properly filed the notice of lien within the ninety day period, Jenkins' lien has precedence over conveyances made within ninety days after the date of completion. Tenn. Code Ann. § 66-11-117 (1993).

The lien statutes must be construed *in pari materia*. To give the statutes the construction proposed by appellants would negate the protection the statutes intended to provide. Appellants argue that the 1990 Tennessee General Assembly amendments to the materialmen's lien statute attempt to prevent subcontractors and material suppliers from having claims against homeowners who had paid the general contractor for all services and materials provided. They cite us to *Tennessee Attorney General Opinion* No. 91-14 to illustrate this point. In essence, they argue that upon completion the general contractor/owner can abolish all materialmen's liens by conveying the property to "innocent third party purchasers." This is simply not the case. Even though we feel the lien statutes referred to *supra* make it quite clear that defendants' assertion is misguided, Tenn. Code Ann. § 66-11-143 erases any doubt that might have remained. Tenn. Code Ann. § 66-11-143 provides in pertinent part:

> (a) In order to be protected from lien claims which have not previously been registered as provided in §§ 66-11-111, 66-11-112, and 66-11-117, the owner or purchaser of improved real property may, upon completion of the improvement or the demolition thereof, register in the office of the register of deeds in the county where the real property or any affected part thereof is located a notice of completion, or the owner or purchaser may require a person or organization with whom the owner or purchaser has contracted for the improvements or demolition to do so upon completion of the structure or improvement or demolition.

> (d)(1) Any person claiming a lien for labor or materials upon the property described in the notice of completion who has not previously registered such person's contract as provided in § 66-11-111 or registered a sworn statement as provided in § 66-11-112 or § 66-11-117 shall send by registered or certified mail written notice addressed to the person, firm or organization and at the address designated in the notice of completion for receiving notice of claims, stating the amount of

10

> the claim and certifying that the claim does not include any amount owed to the claimant on any other job or under other contract.

(1993).

The statute makes it quite clear that an unregistered lien is valid as to subsequent purchasers of the property if the requirements of the various statutes are met and provides an expedited procedure to protect innocent purchasers. Since appellants did not avail themselves of the protection furnished by Tenn. Code Ann. § 66-11-143, they are not in a position to complain. They knew they were purchasing new construction, and that the seller was not only the owner of the property but was also the general contractor and builder of the improvements on the property. When the Falkes chose to purchase the property within ninety days of completion and the Prudential chose to lend money for the purchase of the property when none of them availed themselves of the protection made available by Tenn. Code Ann. § 66-11-143, they acted at their own peril. It is clear from the applicable statutes that Jenkins had a lien and took the proper steps as required by the statutes to protect and enforce the lien. Accordingly, the order of the trial court allowing the enforcement of a materialmen's lien for the amount of all the materials invoiced to the Falkes' home is affirmed.[2]

### Whether the Trial Court erred in requiring Appellants to pay attorney's fees and interest on a contract to which they were not a party.

Tenn. Code Ann. § 66-11-120 provides:

---

[2]Appellants argue that Jenkins' lien should not be enforced and raise the defenses of equitable estoppel and unclean hands to such enforcement. In order to bolster their argument, appellants cite this court to the case of *Hayes Pipe Supply, Inc. v. McKendree Manor, Inc.*, 695 S.W.2d 174 (Tenn. 1985). We agree with the Chancellor that *Hayes Pipe* is distinguishable from the case at bar. In *Hayes Pipe*, there was an agreement between a supplier and contractor to divert funds. In other words, funds paid by owner to contractor were to be paid over to supplier for past due debts and did not necessarily correspond to the particular debt for the supplies on the property for which the owner was paying. The actions of the supplier and contractor in *Hayes Pipe* ran contrary to Tenn. Code Ann. §§ 66-11-138 and 66-11-140. Here, the actions of Jenkins and G.T. Designs fall far from the facts of *Hayes Pipe*. Jenkins and G.T. Designs did enter into an agreement, but the agreement did not violate statutes of Tennessee law. There was no diverting of funds or misappopriation thereof. We see absolutely no proof of an intent to defraud on behalf of Jenkins. To invoke doctrine of equitable estoppel, the party claiming estoppel has the burden to prove each of three elements: party's lack of knowledge and of means of knowledge of truth as to facts in question; party's reliance upon conduct of party who is estopped; and action by invoking party based thereon of such character as to change that party's position prejudicially. We see no evidence of to grant appellants prayer for equitable estoppel. Tennessee law afforded appellants a basis for protection from Jenkins' lien. If appellants had invoked this protection under Tenn. Code Ann. § 66-11-143, this suit could have been avoided. As such, appellants failed to avail themselves of such protection and did so to their own detriment.

> The claims secured by lien for labor done, materials furnished, shall in no case exceed the amount agreed to be paid by the owner in the owner's contract with the original contractor.

The rule is well established in this state that in the absence of a contract, statute, or recognized ground of equity so providing there is no right to have attorney's fees paid by an opposing party in civil litigation. *State v. Thomas*, 585 S.W.2d 606, 607 (Tenn. 1979). The claim here by Jenkins for attorney's fees against appellants is not supported by any contract between them, any statute, or any recognized ground of equity; it must therefore be denied. The same is true of the interest imputed upon the appellants by the trial court. This interest charged against appellants was premised upon a contract to which the appellants were not parties thereto. Consequently, they cannot be expected to uphold the terms of a contract to which they were not parties, nor can they be expected to bear the brunt of an interest of which they had no hand in creating.

## Conclusion

The order of the Chancellor allowing Jenkins to recover attorney's fees and interest from the Falkes, Prudential Home Mortgage Co. Inc., and Arnold Weiss, trustee is reversed; otherwise, the decree of the Chancellor is affirmed. The costs incurred upon this appeal are taxed equally against H.W. Jenkins Co., John and Lana Falke, Prudential Home Mortgage Company, Inc., and Arnold Weiss, Trustee.[3]

_____
HIGHERS, J.


CONCUR:


_____
FARMER, J.

---

[3]We note that Jenkins prays for attorney's fees necessitated by appellants' Tennessee Consumer Protection act claim. Appellants withdrew their Tennessee Consumer Protection Claim at trial. The Chancellor thought that for equitable reasons he would not award attorney's fees under the Consumer Protection claim. We cannot say that the evidence preponderates against the Chancellor's reasoning and, consequently, affirm his decision in denying Jenkins' claim for attorney's fees based on appellants' Tennessee Consumer Protection claim.

12

_____

LILLARD, J.