IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
_____

LARRY AUBREY HENSON,

       Plaintiff-Appellant,

Vs.

**ELIZABETH ELLEN SORRELL,**

       Defendant-Appellee.

Shelby Circuit No. 79501
C.A. No. 02A01-9711-CV-00291

FILED

January 8, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

_____

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE JAMES F. RUSSELL, JUDGE

Hal Rounds of Memphis
For Appellant

No Appearance For Appellee

*AFFIRMED*

Opinion filed:

**W. FRANK CRAWFORD**,
**PRESIDING JUDGE, W.S.**

**CONCURS:**

**ALAN E. HIGHERS, JUDGE**

**SEPARATELY CONCURS AND DISSENTS:**

**HOLLY KIRBY LILLARD, JUDGE**

     This case involves allegations of promissory fraud, fraudulent concealment, breach of

contract, conversion, and intentional infliction of emotional distress arising from a woman's

failure to inform her partner that she had stopped taking birth control pills, her subsequent

pregnancy, and the birth of a child. The plaintiff, Larry Aubrey Henson (Henson), appeals the trial court's judgment for the defendant, Elizabeth Sorrell (Sorrell), after a trial on the merits.

The parties first met in 1989 while attending Memphis State University. While the two were friends, they did not become romantically involved at that time. In fact, both parties married other people, yet stayed in contact with one another. They began having lunch "dates" in the early 1990's, yet it was not until their marriages began to fail in 1995 that a romantic relationship began. While both parties were separated from their spouses, a sexual relationship began in April 1995. Both parties subsequently divorced their respective spouses, and Henson began to reside with Sorrell. According to testimony, the parties engaged in sexual intercourse daily.

Prior to the beginning of their sexual relationship Sorrell informed Henson that she was taking birth control pills. According to the trial record and exhibits, Sorrell was experienced with a variety of birth control methods and had been taking birth control pills since December 1994. However, in late June 1995 Sorrell stopped taking birth control pills because she was experiencing side effects associated with the contraceptive. Sorrell admits that she did not inform Henson about stopping the birth control pills, and the parties did not engage in any alternative form of birth control.

As ninth grade biology teaches us, intercourse everyday, coupled with a lack of birth control measures, can cause pregnancy. As would be expected, Sorrell became pregnant shortly after she stopped the birth control pills, and gave birth to a child in March 1996. There is no contention in this appeal that Henson is not the father of that child. In fact according to testimony, Henson was supportive of Sorrell during the pregnancy, and currently pays $300 per month in child support.[1]

Several months after the child was born, Henson filed suit against Sorrell alleging five causes of action:

A. Promissory Fraud

The complaint alleges that defendant induced plaintiff to engage in sexual intercourse and to inseminate defendant by falsely representing that she would assume the exclusive

_____

[1]In another appeal currently before this Court, Henson appeals the paternity ruling of the juvenile court and challenges the constitutionality of the Tennessee Paternity Statute.

2

responsibility to protect against conception, that she knew that this representation was false because she intended to cease taking birth control pills in order to conceive, that plaintiff relied upon her representation without any knowledge of the falsity thereof, and failed to take any precaution to prevent conception.

### B. Fraudulent Concealment

Plaintiff alleges that defendant represented that she would have exclusive responsibility to prevent conception but failed to inform the plaintiff that she had ceased taking birth control pills and fraudulently concealed this material fact in order to induce plaintiff to inseminate her.

### C. Breach of Contract

Plaintiff alleges that the parties had an express agreement to practice and be responsible for birth control procedures to prevent conception of a child and that defendant intentionally breached this agreement when she ceased taking the birth control pill. Plaintiff alleges that he continued to perform the terms of the agreement by "continuing sexual relations with defendant, in reasonable reliance that the defendant was fulfilling her obligations under the agreement."

### D. Conversion

Plaintiff alleges that defendant wrongfully converted property of the plaintiff of her own use in that she intentionally acquired and misused his semen which the parties had expressly agreed would be disposed of without conception.

### E. Intentional Infliction of Mental Distress

Plaintiff alleges that after the child was born, the defendant, while having sole custody, refused to allow the plaintiff to take the child to visit plaintiff's terminally ill father. The plaintiff also alleges that defendant communicated with plaintiff's wife and parents during the pregnancy and early weeks of the child's life, making it more difficult for plaintiff's family relationships.

The complaint seeks damages in the amount of $84,000.00 for the amount of plaintiff's future obligation of child support, and prenatal and natal medical and other costs of the defendant. It also seeks $50,000.00 for violation of plaintiff's right to choose to not procreate. Plaintiff also seeks $100,000.00 for the loss of dominion and control of his sperm which defendant converted to her own use, and $10,000.00 for the intentional infliction of extreme mental distress.

3

Defendant filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted and subsequently filed an answer to the complaint which admitted their intimate relationship but denied the other material allegations. The case was tried by the court without a jury and at the conclusion of the trial, the trial court entered an order of judgment for defendant finding that there was no fraud committed, there was no breach of an express contract, there was no act of conversion, there was no infliction of emotional distress upon the plaintiff. Although the order further provided that the complaint fails to state a cause of action on which relief can be granted the order specifically stated that plaintiff's complaint alleging the various causes of action "is denied on the merits." Plaintiff has appealed and presents the following six issues as stated in his brief:

> 1. Whether Tennessee law regarding the right to not procreate, as recognized by the Tennessee Supreme Court, is available to a male in any circumstance other than in vitro fertilization.

> 2. Whether the right not to procreate can be secured under the principles of contract or tort law by making an agreement with another party when the parties are contemplating production of gametes through sexual activity.

> 3. Whether, under contract law, Tennessee provides a cause of action for recovery of damages for a male whose right to choose to not procreate is violated by a sexual partner who materially misrepresents to him her compliance with such an agreement, and her state of fertility during the sexual relationship, thereby inducing him to continue the sexual relationship with taking contraceptive measures on his own, thus proceeding to make him a father, in violation of his expressed wishes.

> 4. Whether the facts of this case show, as a matter of law, a breach of such agreement, thus violating Henson's right not to procreate, and show damages, as a matter of law, were the proximate result of such a breach, and are quantifiable and recoverable.

> 5. Whether public policy interests of the State conflict with the interests of Henson, and whether such conflicting interests, as a matter of law, outweigh the interests of Henson.

> 6. Further, if such damages are recognized, is the female, by her successful achievement of parenthood, immunized from compensating the male for his injury as a result of her breach? Is this a circumstance where Tennessee imposes an exception to the common law actions of breach, fraud, or conversion which denies the father any right to recover proven injuries?

As noted, the trial court found that defendant did not commit any fraud or concealment, that there was no agreement between the parties as alleged, there was no conversion of property

4

as alleged, nor was there any infliction of mental distress as alleged. Plaintiff simply did not carry his burden of proof as to any of the alleged causes of action. There was no proof concerning any express agreement between the parties, nor was there any proof concerning the promise by defendant to provide for contraception. The conversion claim likewise fails for lack of proof of any agreement regarding the disposal of the semen. As to the infliction of mental distress, the record presents no proof of any emotional distress on the part of plaintiff resulting from the failure of grandparent visitation. Any conflicts in the testimony must be resolved by the trial court as the credibility of witnesses rests in the first instance with the trial court and will be given great weight by the appellate court. *Haverlah v. Memphis Aviation*, 674 S.W.2d 297, 302 (Tenn. App. 1984). Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13 (d).

From our review of the record, we conclude that the evidence does not preponderate against the findings of the trial court. However, since the trial court stated that plaintiff's complaint did not state a claim upon which relief can be granted, and plaintiff's issues for review peripherally addressed that finding, we will address that issue on appeal.

Although we are not aware of any Tennessee cases directly on point, our research has revealed numerous cases from other jurisdictions with essentially the same set of facts alleged by Henson. In some jurisdictions, the father has attempted to use the mother's false representations as a defense to support claims but without success. *Erwin L.D. v. Myla Jean L.*, 847 S.W.2d 45 (Ark. App. 1993); *Faske v. Bonanno*, 357 N.W.2d 860 (Mich. App. 1984); *L. Pamela P. v. Frank S.*, 449 N.E.2d 713 (N.Y. 1983); *Hur v. Virginia Dept. of Soc. Serv. Div. of Child Support Enforcement*, 409 S.E.2d 454 (Va. App. 1991). Suits such as the case at bar in which the father attempts to recover damages from the mother because of false representations concerning birth control also have been universally rejected primarily on the basis of public policy.[2] *See Stephen K. v. Roni L.*, 164 Cal. Rptr. 618 (1980); *Welzenbach v. Powers*, 660 A.2d 1133 (N.H. 1995);

---

[2]This scenario seems to be quite frequent in what some commentators describe as "sexual fraud." One scholar writes, "[a] frequent fact pattern in sex fraud cases is where one sexual partner falsely claims to be infertile or to be using birth control. If a child is subsequently born, does the defrauded party have a cause of action? I have found no cases holding for plaintiffs in these circumstances." Dan Subotnik, *"Sue Me, Sue Me, What Can You Do Me? I Love You"-- A Diquisition on Law, Sex, and Talk*, 47 Fla. L. Rev. 311, 409 (1995)(citations omitted).

*C.A.M. v. R.A.W.*, 568 A.2d 556 (N.J. 1990); *Jose F. v. Pat M.*, 586 N.Y.S.2d 734 (N.Y. Sup. Ct. 1992);

*Smith v. Price*, 328 S.E.2d 811 (N.C. App. 1985); *Moorman v. Walker*, 773 P.2d 887 (Wash. App. 1980);

*Linda D. v. Fritz C.*, 687 P.2d 223 (Wash. App. 1984). *See also* Anne M. Payne, *Sexual Partner's Tort*

*Liability to other Partner for Fraudulently Misrepresentation Regarding Sterility or Use of*

*Birth Control Resulting in Pregnancy*, 2 A.L.R.5th 301 (1992).

Although the opinion of our Supreme Court in *Smith v. Gore*, 728 S.W.2d 738 (Tenn. 1987) involved a medical malpractice case for wrongful pregnancy or conception, we perceive the reasoning of the Court to be equally applicable to the case at bar. In *Smith,* a 25-year old female had a tubal ligation, but subsequently became pregnant and gave birth to a heathy, normal baby boy. She sued the doctor who performed the procedure, the hospital, and the manufacturer of the materials used. She alleged that the doctor and hospital were negligent, and her claim against the manufacturer was predicated on failure to warn and breach of warranty. She sought recovery of damages for emotional distress, loss of income, medical expenses, and the expenses of rearing the child to majority. The trial court denied the defendant's motion to dismiss the case for failure to state a claim for recovery of expenses of rearing a normal, healthy child. The Court of Appeals reversed, holding that the damages were limited to those immediately related to pregnancy and the birth of the child. The Supreme Court affirmed the Court of Appeals and remanded the case for further proceedings consistent with its opinion.

The Court noted that the case involved an ordinary tort action and that plaintiff had suffered a foreseeable consequence that she had sought to avoid by having the operation. The question to be resolved was the scope of the damages recoverable by the plaintiff and "[t]he question then becomes whether the legal cause of Plaintiff's injury (i.e., the necessity to support her fifth child) can be considered to be the acts or omissions of Defendants." *Id*. at 749. The Court said:

> As Prosser further observed, the determination of the extent of liability and legal causation inescapably involves notions of public policy. *Torts* (4th ed. 1971), § 3, at 14-15; § 42, at 244. The relationship of legal causation to the extent of damages must be analyzed carefully in this case. The Restatement Second of Torts, § 431, states:
>
> > "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, *and* (b) there is no rule of law relieving the actor from liability

> because of the manner in which his negligence has resulted in the harm." (Emphasis added.)

Thus, if some definable policy relieves Defendants of the responsibility for the otherwise foreseeable consequences of the failed pregnancy avoidance technique, then they cannot be held liable for the rearing expenses of Plaintiff's health child.

*Id.*

The Court then noted the numerous Tennessee statutory enactments concerning parents' obligations for the support of their children, including a father's obligation to support children born out of wedlock, discussing these provisions extensively, the Court then said:

> Although Plaintiff has alleged an ordinary common law tort and, if successful, may recover damages for the foreseeable consequences of the tortious injury, as Section 431 of the Restatement Second of Torts provides, the manner in which the harm (i.e., the birth of a normal child who must be supported until at least the age of majority) resulted limits Defendants' liability for the support of this child because legislative enactment of such comprehensive statutory schemes controlling child custody and support demonstrates that the public policy of Tennessee is that the obligation for support of minor children is affirmatively placed on the parents of the children. The fact that a normal child is the result of a failed pregnancy avoidance technique will not shift this responsibility from the parents to the defendant in such a case. Application of general common law principles of tort recovery is not appropriate in this case because both the common law itself and statutory law have specifically established responsibility for the support of children. If this responsibility is to be shifted away from the parents, such a determination is for the Legislature and not the Judiciary. Significant and far-reaching questions of social policy are involved, "and it is the prerogative of the General Assembly to declare the policy of the State touching the general welfare." ***Baptist Mem. Hosp. v. Couillens, supra,*** 176 Tenn. at 311-312, 140 S.W.2d at 1093.

> We conclude that in a wrongful pregnancy action the law relieves these Defendants of liability for the otherwise foreseeable consequences of the failed pregnancy avoidance technique to the extent that the obligation to support minor children clearly rests upon the parents. The responsibility for support of Plaintiff's fifth child rests with Plaintiff and the father of this child. The laws of the State will assist Plaintiff in assuming this responsibility. In view of the nature of the injury to Plaintiff and the numerous, complex and competing social policies involved, the firmly established common law and statutory obligation of parents to support their children is not shifted as a result of the tort of wrongful pregnancy. Defendants' negligence cannot be considered the legal or proximate cause of the damages incurred by Plaintiff for the support of her normal, healthy child in the circumstances of this case. The extent of recovery is thus limited to those damages immediately flowing from the failed pregnancy avoidance technique.

*Id.* at 750-51.

7

Although the alleged actions of the defendant in the case at bar are intentional, as opposed to the allegedly negligence acts in *Smith*, we find no discernable difference in the legal obligations imposed. In *Smith*, an attempt was made to shift the parents' responsibility to defendants, and in the present case the attempt is made to shift one parent's responsibility totally to the other parent. By analogy with *Smith*, we conclude that in a case where a party seeks damages resulting from a misrepresentation concerning conception, the law relieves the defendant of liability for the otherwise foreseeable consequences of the sexual intercourse "to the extent that the obligation to support minor children clearly rests upon the parents." *Id*. As in *Smith,* the extent of recovery would be limited to those damages immediately flowing from the defendant's wrongful conduct. *Id.*

The concurrence and dissent states that an inference may be drawn from the majority opinion that a party such as Henson may recover damages immediately flowing from the wrongful conduct as provided for in *Smith v. Gore*, 728 S.W.2d 738 \(Tenn. 1987). It points out that payment of expenses for pregnancy and child birth is addressed in T.C.A. § 36-2-311 (a)(13), and we have no disagreement with that statement. We do note, however, that the statute referred to provides that the court make a "determination of liability for a *mother's* reasonable expenses for her pregnancy, confinement, and recovery to *either or both parties*." T.C.A. § 36-2-311 (a) (13) (emphasis added). This statutory provision was enacted by the legislature in Chapter 477, Public Acts of 1997. This Act, among other provisions, repealed T.C.A. § 36-2-102, which specifically provided that a father of a child born out of wedlock is liable for, among other thing, the expenses of the mother's confinement and recovery. It seems significant that the legislature abandoned this mandatory provision concerning expenses and substituted in its place a provision for a court determination of liability to either or both parents.

The *Smith* Court premised its decision on the common law and statutory provisions obligating both parents for the support of minor children. Although changing the mandatory obligation of the father to pay for expenses, the legislature did not change the provisions of T.C.A. § 34-11-102 (a)(1997) obligating both parents for the support of minor children. We consider there to be a distinct difference between the parents' obligation of support as required by T.C.A. § 34-11-102 (a) and the discretionary assessment of medical expenses incurred with

8

a birth as provided for in T.C.A. § 36-2-311 (a)(13).

The costs of confinement and the expenses incurred in connection with the maternity are obligations incurred, not by the child, but by the party involved. However, the obligation of support under the common law and by statute is an obligation owed to the child. The Court in *Smith* was very careful to state the basis for its decision:

> Rather than ground our decision on abstract notions of public policy, we rest our holding limiting Defendants' liability in this case on two grounds: (1) that the State of Tennessee imposes by statute the responsibility for the support of children upon the parents, thereby relieving Defendants of the liability for the support of Plaintiff's healthy child, and (2) considering not only the extensive statutory law regarding the obligation to support, but in light of both the common law obligation to support and this Court's restricted role in declaring public policy, shifting the common law and statutory obligation from the parents to defendant in such cases as these must be left to legislative action.

728 S.W.2d at 745.

There is no doubt that matters involving intimate relations between the parties are essentially very private affairs. Notwithstanding that fact, we do not feel that in a case alleging fraud and misrepresentation where legal causation can be proven (which is not the case as to parental support) this Court should not attempt to establish a rule to preclude such a cause of action. To do so would, of course, equally affect the situation where the female of the liaison had a cause of action for fraud or misrepresentation and sued for expenses incurred for the avoidance of the pregnancy and any physical pain and suffering as a result thereof. We simply feel that until the legislature speaks on this matter, the common law rights resulting from fraudulent misrepresentation should not be abolished in an appropriate case where legal causation can be shown.

The judgment of the trial court is affirmed. Costs of the appeal are assessed against the appellant.

 

 

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

 

 

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

9

**SEPARATELY CONCURS AND DISSENTS:**

**HOLLY KIRBY LILLARD, JUDGE**