IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2004 Session

## LUVELL L. GLANTON v. BOB PARKS REALTY, ET AL.

**Appeal from the Circuit Court for Williamson County**
**No. 1-2K635     Russ Heldman, Chancellor**

---

**No. M2003-01144-COA-R3-CV - Filed April 27, 2005**

---

The plaintiff purchased a house that was marketed by the defendant realtors. The house had been described as including over 5,800 square feet of living space. After the purchase, the plaintiff discovered that the actual square footage of the house was considerably less, depending on what was included. He sued for unfair or deceptive practices under the Tennessee Consumer Protection Act and for intentional misrepresentation. The trial court dismissed his complaint on summary judgment, and ordered the plaintiff to pay all the defendants' attorney fees. We affirm the dismissal, but modify the award of attorney fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**
**As Modified**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Tusca R.S. Alexis; Luvell L. Glanton, Nashville, Tennessee; Charles A. Mathis, Jr., Atlanta, Georgia, for the appellant, Luvell L. Glanton.

Douglas Berry, Nashville, Tennessee; for the appellees, Sharon Cummings and Legacy Properties, LLC.

David W. Kious, Murfreesboro, Tennessee, for the appellees, Bob Parks Realty and Lucy Bottorff.

### OPINION

This case arose from the purchase of a spacious luxury home on Princeton Hills Drive in Brentwood. The buyer, attorney Luvell Glanton, was alerted to the availability of the home by Ned and Becky Newsham, his own real estate agents, who had seen it listed in the Multiple Listing Service (MLS). The listing stated that the house had 5,866 square feet of living space. Prior to listing the house the defendant real estate agents, Lucy Bottorf and Sharon Cummings, had obtained

information from the tax rolls of Williamson County which indicated that the house contained 5,380 square feet.

On April 29, 2000, Mr. Glanton and the Newshams visited the house and met the defendants for the first time. On May 1, Mr. Glanton returned and obtained a brochure that stated that "this beautiful 2 story home has 13 rooms with a total of 5,855 square feet of comfortable family living."[1] The brochure also recited an asking price of $1,200,000 for the house, and $1,325,000 for the house plus furnishings.

Luvell Glanton testified in deposition that he asked Ms. Bottorf about the square footage and that she said it did not include the pool house, a separate building with a tile floor, kitchen and bathroom that had been added by the owner after he purchased the house. Ms. Bottorf testified to the contrary that she simply told him that the pool house was not included in the original plans for the house.

Mr. Glanton returned to the home several times after that. On one such occasion, he found a set of blueprints for the house that had been left in a drawer, but did not examine them closely. The blueprints show that the house is not in the form of a simple rectangle, but has a very irregular shape, with many protrusions of different sizes, and a second level that is considerably smaller than the first.

Mr. Glanton made an initial offer, and the sellers made a counter-offer. After further negotiations, the parties settled on a price of $925,000 for the house and $85,000 for partial furnishings. After Mr. Glanton applied for a mortgage loan from the Bank of America, an appraiser acting on behalf of the bank prepared an appraisal of the property. The appraisal, dated May 12, 2000, valued the property at $955,000, and the bank promptly informed Mr. Glanton of that fact. Mr. Glanton did not ask for a copy of the appraisal. He closed the purchase of the house on May 30, 2000.

An agent of the bank sent Mr. Glanton a courtesy copy of the appraisal report on or about July 1, 2000. The report listed the gross living area of the house as comprising only 4,600 square feet. Mr. Glanton immediately contacted Ned Newsham and, at his suggestion, called the appraiser, who confirmed that the figure of 4,600 square feet was correct. After this was conveyed to Mr. Newsham, he called defendant Bottorf about the discrepancy. She promised to get back to the buyer's agent, but never did.

---

[1] The record contains two brochures, identical in every respect except that one recites a figure of 5,855 square feet of living space, and the other a figure of 5,866 square feet.

# I. LEGAL PROCEEDINGS

On November 13, 2000, Mr. Glanton filed a complaint in the Williamson County Chancery Court, naming as defendants Ms. Bottorf, Ms. Cummings, and the brokers they worked for, Bob Parks Realty and Legacy Properties respectively. He claimed that the defendants had violated Tenn. Code Ann. § 48-18-104, part of the Tennessee Consumer Protection Act ("Act"), by misrepresenting the square footage of the house. His complaint also included a claim for intentional misrepresentation and a plea for damages of $198,000.

After the complaint was filed, the Williamson County Tax Assessor read about it in a newspaper of record. He contacted Mr. Glanton and asked if he could re-measure the house. After doing so, the assessor concluded that the house had about 4,800 square feet of living space, or 5,233 if the pool house was counted. Mr. Glanton also hired his own appraiser, J. Donald Turner, to give him an expert opinion about the property. Mr. Turner found that the property had 4,543 feet of living space and valued it at $810,000 at the time the plaintiff purchased it.

The defendants filed an answer to the complaint. They denied liability and asked for attorney fees under Tenn. Code Ann. § 47-18-109(e)(2) of the Consumer Protection Act, which allows such fees upon a finding that "the action is frivolous, without legal or factual merit, or brought for the purpose of harassment. . . ."

A long period of discovery followed, during which the parties took the depositions of Mr. Glanton, Ms. Cummings, and Ms. Bottorf, as well as of Robert A. Parks and two employees of Bob Parks Realty, Paula Kay Spicher, and John W. Mayfield. Much of the discovery related to the question of the proper procedures for the determination of square footage for the purpose of residential real estate transactions.

Ms. Cummings and Ms. Bottorf were both questioned at length about how they arrived at the square footage for the MLS listing. They testified that they did the calculations together, starting with the 5,380 square feet from the tax appraisal. They then consulted a set of blueprints and measured individual rooms to see if they conformed to the dimensions on the blueprints, and they made adjustments for a recreation room, a heated garage[2] beneath it, and the pool house, all of which they believed may not have been included in the tax appraisal. Even though both deponents had their own very extensive notes available to refresh their memories, neither was able to replicate the original calculations used to reach the square footage printed in the brochure or to say exactly what they included.

---

[2]The blueprints Ms. Cummings and Ms. Bottorf used contained separate figures for the square footage of the first and second stories of the house. They testified that they were unable to determine whether the area of the recreation room, the floor of which was higher than the first story but lower than the second, was included in the figure for the square footage for either floor. They assumed that it was included in neither. Ms. Cummings was unable to state with certainty whether the garage was included in the final calculations. She testified that garage space is not normally included when calculating square footage of living space, but that she had "never seen a garage as nice as this one."

Robert A. Parks is the owner of Bob Parks Realty. Paula Kay Spicher works as a trainer for new real estate agents at Bob Parks Realty, and John Mayfield is a manager for that company. All three were questioned in deposition about industry standards and practices for measuring square footage. A manual on the subject, prepared by MLS, was made an exhibit to the testimony of both Ms. Spicher and Mr. Parks. We do not believe it necessary to discuss the subject in exhaustive detail, but it is apparent that Ms. Cummings and Ms. Bottorf did not go about it precisely in the way described in the manual.

According to the manual, the correct way to arrive at the total square footage of a house is to directly measure the outside surfaces of exterior walls, multiply length times width, and then subtract the square footage of interior spaces that are not heated and finished. If the exterior dimensions of a second floor do not fully match those of a first floor, then the measurements of individual rooms are to be used to calculate the square footage of the second floor, with additional inches to be added for the thickness of the exterior walls.

Robert Parks testified that if the house was not a simple one or two story rectangular structure, he would recommend that his brokers not try to physically measure, because that can be extremely hard to do. He recommended, instead, that they rely on tax records or blueprints if they seemed to be reliable. Mr. Mayfield testified that it was sometimes permissible to base calculations of square footage on blueprints or other sources of information, so long as they were reliable.

The guidelines state that all space that is heated and finished should be included in the final calculation, but garages should be excluded unless they have been converted into living space. Mr. Parks, Ms. Spicher and Mr. Mayfield were all in agreement that a pool house that is heated and finished should be included, even if it is not attached to the main house.

On November 8, 2002, the defendants filed a motion for summary judgment, accompanied by a statement of material facts not in dispute, the above-mentioned depositions, a number of affidavits, and a Memorandum of Law. Among other things, the memorandum stated that in asking for relief under the Tennessee Consumer Protection Act, Mr. Glanton had only quoted language from Tenn. Code Ann. § 47-18-104(b)(21) the "bait and switch" provision of the Act, and that this provision was not relevant to the facts of the case. In his response to the motion, Mr. Glanton argued that even if Tenn. Code Ann. § 47-18-104(b)(21) did not apply to his claim, he was still entitled to recover under the Act, which generally provides a right of action "for a consumer who is the victim of an unfair or deceptive act in the course of any trade or commerce."

Following a hearing on December 9, 2002, the trial court granted the defendants' motion for summary judgment, finding there were no genuine issues of material fact and that the defendants were entitled to judgment as a matter of law. The court's order recites a long list of documents it relied on in reaching its decision, but omits from its list the affidavit of J. Donald Turner, who performed the appraisal which was commissioned by Mr. Glanton. The order also set the date for a hearing on the defendants' counter-claims for discretionary costs and attorney fees under Tenn. Code Ann. § 47-18-109(e)(2).

The plaintiff subsequently filed a motion to alter or amend the judgment. The trial court denied the motion. In the same order, the court declared that the defendants' counterclaim was well-taken, because the plaintiff's action was without legal or factual merit. The hearing on attorneys fees resulted in a $14,134 judgment for defendants Bottorf and Bob Parks Realty, and a $12,167 judgment for defendants Cummings and Legacy Properties.[3] This appeal followed.

## II. SUMMARY JUDGMENT

The standards for our review of a summary judgment decision are well known. This court must review the record without a presumption of correctness to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000). The requirements for the grant of summary judgment are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764. Thus, summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion - that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Goodloe v. State,* 36 S.W.3d 62, 65 (Tenn. 2001).

We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Summers v. Cherokee Family & Children Serv.*, 112 S.W.3d 486, 508 (Tenn. Ct. App. 2002). Where there exist factual disputes that must be resolved before a determination on the legal issues can be made or there is any doubt as to the conclusions to be drawn from the facts, summary judgment must be denied. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). That is because summary judgment "is clearly not designed to serve as a substitute for the trial of genuine and material factual matters." *Id*., 847 S.W.2d at 210.

A party seeking summary judgment has the burden of demonstrating that its motion satisfies the requirements of Rule 56, including its entitlement to judgment as a matter of law. *Carvell v. Bottoms*, 900 S.W.2d 23, 25 (Tenn. 1995); *Jones v. City of Johnson City*, 917 S.W.2d 687, 689 (Tenn. Ct. App. 1995). When a party seeking summary judgment makes a properly supported

---

[3]The costs awarded by the court included discretionary costs, which the trial court may award to the prevailing party under Tenn.R.Civ.P. 54.04(2). However, the defendants stipulated that they mistakenly asked for, and the trial court mistakenly granted them, $1,000 for preparations for deposition by an expert witness. Such expenses are not properly recoverable as discretionary costs. *See Miles v. Marshall C. Voss Health Care Center*, 896 S.W.2d 773, 776 (Tenn. 1995). The trial court affirmed its initial award without eliminating the erroneously awarded $1,000.

motion, the burden shifts to the nonmoving party to set forth specific facts which must be resolved by the trier of fact. The burden shifting framework has been addressed a number of times by the Tennessee Supreme Court. *Blair*, 130 S.W.3d at 767.

> To properly support its motion, a moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

*Staples*, 15 S.W.3d at 88-89 (citations omitted).

### III. THE TENNESSEE CONSUMER PROTECTION ACT CLAIM

The Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq*., creates a private right of action for "[a]ny person who suffers an ascertainable loss of money or property, real, personal or mixed . . . as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part." Tenn. Code Ann. § 47-18-109.

Tennessee Code Annotated § 47-18-104(b) of the Act lists thirty-six acts or practices that are prohibited because they are deemed to be unfair or deceptive. Thirty-five of those provisions are very specific.[4] The complaint's sole paragraph alleging a violation of the Act stated:

> That the Defendant, Lucy Bottorf advertised the property with the multi-listing real estate service and provided brochures which represented that the property had 5855 square feet of living space. This conduct was in violation of T.C.A. Section 47-18-104 of the Tennessee Consumer Protection Act, which states in pertinent part that it is unlawful for anyone "using statements or illustrations in any advertisement which creates a false impression of the grade, quality, make, value, age, size, color, usability or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is likelihood that the buyer may be switched from the advertised good or services to other good and services."

---

[4] The other is a "catch-all" provision and prohibits "engaging in any other act or practice which is deceptive to the consumer or to any other person." Tenn. Code Ann. § 47-18-104(b)(27). Mr. Glanton did not plead and has not relied on this provision.

The quoted language is from Tenn. Code Ann. § 47-18-104(b)(21), which is a "bait and switch" provision. It clearly does not apply to the present case or to the facts alleged in the complaint. First, there was no switching; Mr. Glanton bought the house he saw. Further, he was not encouraged to substitute some other house, and there is no evidence that any misrepresentation in the brochure was included with the purpose of directing interested buyers to another house. Mr. Glanton does not really allege such a purpose or intent. Second, this particular provision involves only "goods and services."[5] "Goods" are defined as "any tangible chattels." Tenn. Code Ann. § 47-18-103(5). Thus, alleged misrepresentations regarding real property do not fall within the conduct declared a violation of the Act by § 47-18-104(b)(21).[6] Consequently, the complaint failed to state a claim because the facts alleged did not state a violation of Tenn. Code Ann. § 47-18-104(b)(21), the only statute plead.

The Rules of Civil Procedure require parties to plead with specificity when asserting claims based on statutory violations:

> Every pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged.

Tenn. R. Civ. P. Rule 8.05. The complaint quoted the statute alleged to have been violated, and the factual allegations did not constitute, as a matter of law, a violation of that statute.

Additionally, Tennessee Consumer Protection Act claims must be stated with the particularity of common-law fraud claims under Tenn. R. Civ. P. 9.02.[7] *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275-76 (Tenn. Ct. App. 1999); *Humphrey v. West End Terrace, Inc.*, 795 S.W.2d 128, 132 (Tenn. Ct. App. 1990).

After the deficiencies in the complaint's allegations of violation of the Act were pointed out in the defendants' motions for summary judgment, Mr. Glanton did not amend his complaint. Instead, in his opposition to the motion, he argued that "even if his cause of action doesn't exist under T.C.A. 47-18-104(b)(21)," he had nonetheless stated a claim under the Act generally because it provides a right of action to a consumer who is the victim of an unfair or deceptive act in the course of any trade or commerce.

---

[5]There was no allegation that the nature or quality of any services were misrepresented.

[6]Other provisions of the Tennessee Consumer Protection Act, not limited to transactions involving goods, may be applicable to sales of real property, although not to isolated sales by an individual homeowner who is not in the business of selling houses. *Ganzevoort v. Russell*, 949 S.W.2d 293, 297-298 (Tenn. 1997).

[7]In pertinent part, that rule provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Tenn. R. Civ. P. 8.06 states that "[a]ll pleadings shall be so construed as to do substantial justice." Even though specificity of pleading was required in this case under Tenn. R. Civ. P. 9.02 and 8.05 and we must examine the complaint in light of these requirements, we must also determine the sufficiency of the claims in light of Tenn. R. Civ. P. 8.01's liberal pleading standards. *Harvey*, 8 S.W.3d at 275-76. Of course, that rule requires that the complaint set forth a statement of the claim showing that the pleader is entitled to relief. The facts alleged, even if proved, do not constitute a violation of the statute plead in the complaint.

On appeal, Mr. Glanton argues that the complaint does state a claim for violation of Tenn. Code Ann. § 47-18-104(b)(21), relying on only the portion of that provision prohibiting misrepresentation as to the characteristics of goods and excluding the language "in such a manner that later, on disclosure of the true facts, there is likelihood that the buyer may be switched from the advertised good or services to other good and services," *i.e*., the "switch" part of "bait and switch." This court cannot overlook that language and must read the statutory provision as a whole. It simply does not apply to the facts alleged.

Additionally, although Mr. Glanton quotes the statutory definition of "goods" as being chattels, he still argues that the provision applies to misrepresentation regarding the characteristics of real property. He is mistaken; "chattel" is personal property. *See Concklin v. Holland*, 138 S.W.3d 215, 222 (Tenn. Ct. App. 2003) (holding that prima facie element of a negligent entrustment claim is entrustment of a chattel and, consequently, a claim alleging entrustment of real property must fail). The statutory provision relied on by Mr. Glanton simply does not apply to alleged misrepresentations as to the characteristics of a piece of real property.

Consequently, we affirm the grant of summary judgment on the Tennessee Consumer Protection Act claim.

## IV. FRAUDULENT OR INTENTIONAL MISREPRESENTATION

Mr. Glanton asserts there exist a number of disputed facts that are material to his claims of misrepresentation. To determine the materiality of any fact, we must first examine the elements of intentional or fraudulent misrepresentation, the only type of misrepresentation plead.[8]

In order to prove a claim based on fraudulent or intentional misrepresentation, the plaintiff must show that: (1) the defendant made a misrepresentation of an existing or past fact; (2) the representation was false when made; (3) the representation related to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) the plaintiff reasonably relied on the misrepresented material facts; and (6) the plaintiff suffered damage as a result of the misrepresentation. *Allied Sound, Inc. v. Neely,* 58 S.W.3d 119, 122 (Tenn. Ct. App.

---

[8]During oral argument, Mr. Glanton's attorney stated that his Complaint "clearly alleged" negligent misrepresentation, fraud and violation of the Consumer Protection Act. A careful reading of the Complaint reveals no allegation of negligent misrepresentation. *See* footnote 11 herein.

2001); *Metropolitan Gov't of Nashville and Davidson County v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992). In essence, there must be an intentional misrepresentation of an existing material fact, reasonable reliance on which causes damage to the relying party. *Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998); *Axline v. Kutner*, 863 S.W.2d 421, 423 (Tenn. Ct. App. 1993*); Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990). The burden is on the plaintiff to show that his or her reliance on the defendant's representation was reasonable. *McKinney*, 852 S.W. at 237.

In his complaint, Mr. Glanton alleged that the representation made by the defendants that the house contained 5,855 square feet of living space was false when made and that the defendants knew that representation was false or made the representation with a reckless disregard for the truth of the statement. He also alleged that Ms. Bottorf and Ms. Cummings made the representation with the intention and for the purpose of inducing him to purchase the house. He also claimed that he reasonably relied on the representation of square footage and would not have entered into the contract to purchase the house if he had known the representation as to square footage was false.

To prevail at summary judgment, Ms. Cummings and Ms. Bottorf were required to either affirmatively negate one of the essential elements set out above or conclusively establish an affirmative defense. *Blair*, 130 S.W.3d at 768; *Staples*, 15 S.W.3d at 88; *McCarley,* 960 S.W.2d at 588. If they failed to accomplish one of these, they were not entitled to summary judgment, and the burden did not shift to Mr. Glanton to come forward with additional proof of the existence of the challenged element.

The first element requires a showing that an existing fact was misrepresented. The evidence presented by the parties includes varying figures for the square footage of the house. The lender's appraiser's report lists living space at 4600 square feet and included a sheet detailing the calculation by room or floor. The report makes clear that the poolhouse was not included in that number. The appraiser hired by Mr. Glanton after closing did not submit an appraisal report. Instead, he furnished an affidavit stating that in his opinion the house had 4543 square feet of living space and that neither the garage nor the pool house should have been included in the calculation of living space. The tax appraiser re-inspected the house and concluded that the house had about 4800 square feet of living space if the pool house were not included and 5233 if it were. These numbers would indicate that the pool house was approximately 430 square feet in area.

Therefore, there is a dispute as to the correct square footage of the house. Summary judgment is not the appropriate procedure to decide the actual size of the house. The evidence indicates that in determining the square footage of a house, exactness is not required and not always possible, and that some discrepancies can be expected depending upon which of the accepted methods is used to calculate square footage. The proof offered by Mr. Glanton would establish the square footage at approximately 4600 without the pool house and approximately 4900 if the pool

house were included.[9] Thus, there was a discrepancy of 950 to 1250 square feet between the number on the brochure and the estimates of the appraisers, resulting in a maximum difference of 25%. This is a significant enough variance to establish a misrepresentation of existing fact for purposes of summary judgment.

However, the second element requires a showing that the misrepresentation was intentional, was made without a belief it was accurate, or was made with reckless disregard for the truth. In response to Mr. Glanton's allegations that the misrepresentation of square footage in the brochure was intentional, Ms. Cummings and Ms. Bottorf testified in deposition as to their efforts to calculate the square footage. They had extensive notes from their attempts to calculate the size of the house. They consulted the appraisal done for real estate tax assessment and the blueprints. They added to the figure used for tax assessment the pool house, which had been built by the current owner. Although they made errors in judgment in deciding what to add to the appraisal[10] and were unable to recreate their calculation process to arrive at the same number they used in the brochure, their evidence negates the allegations that they intentionally misrepresented the size of the house in order to induce a sale. We also think it negates any allegation of reckless disregard for the accuracy of their calculations. They spent some time attempting to determine the square footage, using information provided by others, but were negligent or careless in their calculations. Negligence does not equate to intent or reckless disregard.[11]

---

[9]As to this element, the issue is not whether the pool house was appropriately included in the square footage of living space as represented by the agents. The agents and brokers provided evidence that including the pool house was acceptable practice. However, Mr. Glanton claims that one of the agents specifically told him the pool house was not included in the number shown on the brochure. Although the agent denies making that statement, this dispute of fact cannot be resolved on summary judgment.

[10]For example, they added the area of the recreation room to the figure found in the tax appraisal, even though they did not know whether or not the tax appraisal already included that room. They did not make any effort to check with the tax appraiser and made only an unsuccessful attempt to confirm their guess through examining the blueprints.

[11]The complaint did not allege a cause of action for negligent misrepresentation and did not allege facts to establish all the elements such a cause of action. To prove a claim of negligent misrepresentation, a plaintiff must show: (1) the defendants were acting in the course their business, profession, or employment; (2) that they supplied false information for the guidance of others; (3) that they failed to exercise reasonable care in obtaining or communicating that information; (4) that the plaintiff justifiably relied on the information; and (5) that he suffered damages as a result. Restatement (Second) of Torts, § 552 (1977); *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997); *Staggs v. Sells*, 86 S.W.3d 219, 223 (Tenn. Ct. App. 2001); *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991). The tort is applicable to any business person, not just professionals. *Ritter v. Custom Chemicides*, 912 S.W.2d 128, 131 (Tenn. 1995). Liability may attach when a person, in the course of his or her business, negligently provides false information where it is foreseeable that the plaintiff will use or rely on the information provided. *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431-32 (Tenn. 1991). It is well-established that before a seller of property makes a representation of fact, he or she is required to exercise reasonable care and competence in obtaining or communicating the information. *Staggs*, 86 S.W.3d at 223; *Akbari v. Horn*, 641 S.W.2d 506, 508 (Tenn. Ct. App. 1982); *Haynes v. Cumberland Builders*, 546 S.W.2d 228, 232 (Tenn. Ct. App. 1976). As this court has recently stated, " we note the well-nigh truistic legal principle that a real estate agent for a seller has a duty to use reasonable care in determining that all representations made are true." *McRae v. Hagaman*, No. E2004-00852-COA-R3-CV, 2004 WL 2378109 (Tenn. Ct.

(continued...)

Mr. Glanton did not refute the agents' testimony or provide evidence creating an issue of fact as to their intent. Instead, he argues that the agents were aware, or more accurately should have been aware, that they had not conformed to established standards for measuring square footage. This argument does not establish the agents' knowledge that their calculations were incorrect or a reckless disregard for their accuracy. Consequently, we conclude that summary judgment for the defendants on the claim of intentional misrepresentation was appropriate and affirm the trial court on this issue.

## V. ATTORNEY FEES

The trial court awarded the defendants all the attorneys' fees they incurred in defending this lawsuit under a provision of the Tennessee Consumer Protection Act that allows for an award of attorney fees to the prevailing party in enumerated circumstances. Tennessee Code Annotated § 47-18-109(e) states:

> (1) Upon a finding by the court that a provision of this part has been violated, the court may award to the person bringing such action reasonable attorney fees and costs.

> (2) In any private action commenced under this section, upon finding that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court may require the person instituting the action to indemnify the defendant for any damages incurred, including reasonable attorney's fees and costs.

We have had many opportunities to examine awards of attorney fees for prevailing plaintiffs under the first subsection of the statute. *See, e.g., Killingsworth v. Ted Russell Ford*, Inc., 104 S.W.3d 530 (Tenn. Ct. App. 2002); *Lien v. Couch*, 993 S.W.2d 53 (Tenn. Ct. App. 1998); *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297 (Tenn. Ct. App. 1984).

We have had fewer occasions to review the award of attorney fees to defendants under subsection (e)(2). That subsection specifically limits such awards to cases which the court finds to be "frivolous, without legal or factual merit, or brought for the purpose of harassment." As the language of the statute makes clear, even where this prerequisite is met, whether or not to award fees

---

[11](...continued)
App. Oct. 25, 2004) (No Tenn. R. App. P. 11 application filed) citing, *inter alia*, *Staggs*, *supra*.

The complaint alleges that the representations were false when made, "the Defendants knew they were false or the Defendants made the representation described above with a reckless disregard for the truth or falsity of the statement." There is no allegation that the representations were the result of a failure to exercise reasonable care in obtaining or communicating the information on the house's square footage. Nor is there any other allegation that could be construed as claiming negligence.

Additionally, although Mr. Glanton argues that the agents breached the duty of real estate agents established in Tenn. Code Ann. § 62-13-403, he has not alleged a cause of action based on breach of that or any other duty of care.

is discretionary with the court. *Wagner v. Fleming,* 139 S.W.3d 295, 304 (Tenn. Ct. App. 2004); *Harvey v. Covington,* No. M2000-01184-COA-R3-CV, 2001 WL 120733 at *5 (Tenn. Ct. App. Feb. 14, 2001)(No Tenn. R. App. P. 11 application filed).

Because the Act gives the trial court the discretion to award or to deny attorney fees in the circumstances enumerated, we review a trial court's decision regarding fees under the abuse of discretion standard. A finding of abuse of discretion is proper when the trial court applied an incorrect legal standard or reached a decision against logic or reasoning that caused an injustice to the party complaining. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Coley,* 32 S.W.3d 831, 833 (Tenn. 2000).

The Tennessee Consumer Protection Act should be liberally construed to achieve its purpose of protecting consumers from those who engage in deceptive acts or practices. *Morris v. Mack's Used Cars,* 824 S.W.2d 538, 540 (Tenn. 1992); *Haverlah*, 674 S.W.2d at 305. The attorney fee provision found in Tenn. Code Ann. § 47-18-109(e)(1) of the Act was designed to serve that same purpose. As this court said in *Killingsworth*, 104 S.W.3d at 535, "the potential award of attorneys' fees under the Tennessee Consumer Protection Act is intended to make prosecution of such claims economically viable to plaintiff."

Conversely, the provision for attorney fees found in Tenn. Code Ann. § 47-18-109(e)(2) is designed to discourage consumers from using the Act to file frivolous or baseless claims. It is not intended to punish plaintiffs who can demonstrate wrongful acts on the part of defendants, but who are unable to prevail on their claims for other reasons. Too strict an application of this subsection would result in a "winner take all" situation, regardless of the circumstances, that would undermine the purpose of protecting the consumer. We therefore do not interpret the statutory term "without legal or factual merit" to mean without sufficient merit to prevail, but rather as so utterly lacking in an adequate factual predicate or legal ground as to make the filing of such a claim highly unlikely to succeed.

In the present case, the plaintiff asserted a Tennessee Consumer Protection Act claim based upon a section of the Act that does not apply to real property and that prohibits conduct that is different from the conduct he alleged. Where the Act does not apply to the facts alleged, a claim based on the Act is without legal merit. *Wagner*, 139 S.W.3d at 304. Thus, the trial court correctly found the plaintiff's claim to be without legal or factual merit.[12] The complaint on its face failed to establish a legal predicate for the Tennessee Consumer Protection Act, making the success of that claim highly unlikely. In fact, the claim was subject to dismissal under Tenn. R. Civ. P. 12.02.[13] We therefore conclude that the trial court applied the correct legal standard and acted within its discretion as to the claim based upon a violation of the Act.

---

[12]The trial court did not characterize the plaintiff's claim as frivolous, and there was no evidence that it was brought for the purpose of harassment.

[13]When the deficiency in his claim became apparent, the plaintiff took no steps to correct it.

However, the plaintiff also asserted a misrepresentation claim against the defendants. That claim was not amenable to dismissal based on the complaint alone. Instead, the parties undertook discovery. The complaint alleged facts relevant to a claim of intentional misrepresentation. In support of his opposition to the defendants' motion for summary judgment, the plaintiff provided evidence tending to show that the defendants represented the home in question as containing a substantially greater number of square feet than it actually did, that the square footage of the house was of some importance to the plaintiff, and that if he had known of the misrepresentation, it may have affected his negotiations for the house. Since the plaintiff could not point to any evidence that the defendants acted intentionally or recklessly, his claim of intentional misrepresentation was properly dismissed by the trial court.

Tennessee follows the American Rule requiring "litigants to pay their own attorney's fees in the absence of a statute or contractual provision otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998). A party, even a prevailing party, is not entitled to an award of attorney's fees absent a contractual or statutory provision allowing such an award. *Taylor v. Ross*, 736 S.W.2d 614 (Tenn. Ct. App. 1987). There is no statute or contract that would authorize an award of attorneys' fees to either the plaintiff or the defendant in the claim before us. The dismissal herein does not entitle the defendants to an award of fees they incurred in defending the misrepresentation claim.

The question, then, is whether the plaintiff should be required to pay the totality of the defendants' attorney fees incurred in defending both the Tennessee Consumer Protection Act claim and the misrepresentation claim under the authority granted only in the Act. Based on the record before us, we conclude he should not. The purposes of the Act would not be furthered by such an award, and the initiation of the lawsuit was a result, at least in part, of the defendants' actions. They were not uninvolved or innocent bystanders in the miscalculation of the square footage.

Understandably, the affidavits of the defendants' attorneys did not break down their fees according to which of the plaintiff's claims the work related. It would be nearly impossible to accurately separate the legal costs incurred for defending one claim from those incurred for defending the other. We are aware that if we remand this case to the trial court for performance of that task, the parties will have to incur additional fees for an exercise of dubious value. In the interest of judicial economy, we therefore hold that the plaintiff shall be responsible for only one-half of the attorney fees incurred by the defendants. We also direct the trial court to reduce each defendant's award by $500, to eliminate the discretionary costs that the defendants acknowledge were erroneously awarded.

-13-

## VI.

The order of the trial court granting summary judgment to the defendants is affirmed. The order granting attorney fees is modified to make the plaintiff responsible for only half of the defendants' attorney fees and to reduce the award of discretionary costs by $1,000. We remand this case to the Circuit Court of Williamson County for any further proceedings necessary. Tax one-half of the costs on appeal to the appellant, and one half to the appellees.

_____
PATRICIA J. COTTRELL, JUDGE